THE STATE ex rel. R. H. McWILLIAMS v. WIL-LIAM E. BATES et al., Members of Board of Supervisors of Des Moines & Mississippi River Levee District.

In Banc, June 7, 1911.

1. MANDAMUS: In Supreme Court:. Matter for Circuit Court. A suit to compel the board of supervisors of a legally organized levee district to make a levy to pay warrants issued by it in payment for work done by relator in the construction of ditches, done under contract and accepted, where the only point really in issue is whether or not the board could make a valid contract calling for an expenditure of money in excess of the estimated benefits, and can be compelled to make additional levies to pay such indebtedness, should be brought in the circuit court; and if brought as an original proceeding in the Supreme Court, should be dismissed without prejudice, since the case is not of sufficient public importance to warrant the Supreme Court to assume jurisdiction. But where the case has progressed so far that a commissioner has been appointed to take evidence, who has reported, and both sides have filed briefs and made oral arguments on the merits, the Supreme Court will retain jurisdiction and dispose of the case.

2. ————: Levee District: Warrants: No Judgment Thereon. A mandamus suit to compel a board of supervisors of a legally organized levee district to make a levy to pay warrants issued by it to relator in settlement for public work done by him, need not be delayed until he reduces his warrants to a judgment —especially where the board is given opportunity to attack the validity of the warrants.

3. LEVEE DISTRICT: Indebtedness in Excess of Estimated Benefits: Additional Levy. A levee district may legally incur an indebtedness, in the construction of ditches and levees, in ex-

cess of the amount assessed by the commissioners as the probable benefits to be derived from the public improvement; and the board, having made four annual assessments of 25 per cent of the estimated benefits, to pay for ditches contemplated by its plans, has legal statutory authority to make additional levies to pay for the construction of other ditches contemplated by the plans and actually done under contract. The statute (Sec. 5712. R. S. 1909) specifically authorizes such additional levy; and if the supervisors refuse to make it, the court will by mandamus compel them to make it.

4. ———: ———: ———: **Voluntarily Assumed.** Where the statute provides that the owners of two-thirds in area of the lands to be incorporated into a levee district must first organize and sign articles of association, reciting that they "are willing and obligate themselves to pay the tax or taxes that may be necessary to effect the drainage of such lands so formed into a district," the incorporators, who sign the articles, thereby burden their lands situate therein with whatever amount of taxes may be necessary to effect their drainage and protection from overflow; and such incorporators cannot be heard to say that their lands shall not be taxed in excess of a sum to be thereafter estimated by a person selected to make a topographical survey.

5. ———: ———: ———: **As Compared to Street and Sidewalk Improvement.** Unforeseen difficulties and expenditures, which cannot be estimated with precision, enter into the construction of ditches and levees for the protection of lands from overflow waters; while in paving streets and constructing sidewalks the engineer deals with the seen and knowable, and hence cases dealing with suits for money spent in improving a street in excess of the estimated cost are not applicable in a suit for the excessive cost over the probable or estimated cost of a ditch or levee. Besides, statutes regulating street improvements usually prohibit in express terms the letting of contracts at prices in excess of the estimated cost; while the statutes in reference to levee construction (Secs. 5709 and 5712, R. S. 1909) in express terms declare that when assessments amounting to 100 per cent of the probable benefits "shall be inadequate to complete the work proposed," additional assessments shall be made.

6. ———: ———: ———: **Due Process of Law.** The levy and assessment of additional taxes in excess of 100 per cent of the estimated probable cost and benefits, to pay for the construction of ditches contemplated by the original plans, and constructed under legal contract, do not amount to depriving the landowners of the levee district of their lands without due process of law.

7. ———: ———: ———: ———: **Notice.** Landowners who sign the articles of association of a levee district, and landowners

who did not sign who were notified in the way the statute provides of the intended incorporation, are in court and required to take notice of all subsequent proceedings leading up to the drainage of the district, including the assessment of benefits and additional assessments against their lands.

8. ———: ———: ———: ———: ———: Ratification. Where the landowners paid two years' taxes based on the estimated benefits before the district entered into the contract with relator to excavate the ditches, and thereafter, without protest, paid taxes during two additional years, they thereby acquiesced in and ratified said assessment of benefits, and should not be heard to complain that they were not notified thereof.

9. ———: ———: ———: Paying Debt: Due Process of Law. Where landowners have permitted contracts for the construction of ditches and levees for the drainage and protection of their overflowed lands, to be entered into in the name of the district by their duly authorized officers, and where there is no proof of fraud or collusion between those officers and the contractor, and the work has been faithfully performed, they will not be heard to complain that the collection of such taxes as are needed to pay for the work amount to taking their property without due process of law.

10. ———: ———: Balance in Benefit Fund When Contract was Let. Where there was still an unexpended balance in the benefit fund of the district when the contract to construct the ditches was awarded to relator, in an amount sufficient to pay for the work which relator contracted to perform, and there were then no uncompleted contracts for improvements outstanding. it cannot be held that relator's contract called for an expenditure of money in excess of the benefits assessed—although before relator's contract was fully performed, the board exhausted said unexpended balance in paying for work done under other contracts entered into after relator's contract was executed.

11. ———: Invalidity of Contract: Change in Plans. Slight changes in the plans and specifications of the topographical survey upon which the benefits were assessed, made necessary on account of the discovery that a "sand cut" was forming at the head of the ditch which would destroy the ditch—made by the supervisors and their engineer in good faith—will not invalidate relator's contract thereafter entered into, or in anywise affect the validity of the contract where the contractor knew nothing of the alteration until after he had entered into the contract. A reasonable discretion should be allowed to the officers of the district in such matters, so long as they act in good faith.

12. ———: ———: ———:     Reassessment of Benefits: Estoppel. Nor is it necessary, because of such alteration in the plans and specifications, that a reassessment of benefits be made, unless the alteration materially affects the benefits which some of the lands would receive. And where the letting of the contract was fully advertised in a newspaper, and the contractor knew nothing of the alteration in the plans, and the landowners interposed no objection to the alteration in the plans and specifications until after the ditches were completed, they cannot complain that the benefits were based on the previous topographical survey, or demand a reapportionment of benefits.

13. ———: ———:     Change in Size and Shape of Ditch. A change in the size and shape of the ditch from those prescribed by the original plans and specifications, if the condition of the ground makes the change necessary and it is done under an agreement with the board and engineer—for instance, if the ditch was changed from six feet wide at the bottom with a two-to-one slope of the walls, to a ditch twelve feet wide at the bottom with a one-to-one slope, the work being paid for by the cubic yard and the difference in cost being small—does not make void the warrants issued to the contractor in payment of the work.

14. ———:     Liberal Construction. Laws relating to drainage and protection of overflow land should not receive the same narrow and restricted construction that courts give to laws governing the assessment and collection of the revenue.

15. ———:     Additional Levy: Valid Debt: Vote of Landowners. When a levee district has contracted a valid debt its officers cannot be allowed to repudiate it by refusing to levy the necessary taxes to pay it; nor can an adverse vote of the landowners be held to be a valid excuse for refusing to make the levy. Where at the time the district made a valid contract with a relator to construct the ditches there was enough unappropriated and unused benefits to pay him for the work contracted for, and thereafter the board used the balance of the benefit fund to pay for other construction subsequently undertaken, the board cannot excuse itself from making a proper levy to pay him on the ground that, having made four annual levies of 25 per cent of the estimated benefits each, the landowners at the annual meeting did not authorize the board to make an additional levy; for such a holding would make nugatory the statute directing an additional levy and would be to permit the landowners to turn relator away empty handed after having received the fruits of his labor.

16. ———:     Warrants in Payment of Indebtedness. The statutes expressly provide that a contractor who constructs ditches for a levee district under a valid contract shall be paid in warrants; and where the contract is valid, the warrants properly issued are also valid.

17. ———: **Warrants Used to Pay Taxes.** The provision of the statutes making warrants issued by a levee district receivable in payment of the special levee assessments, is incapable of full enforcement. The warrants for any one year may far exceed the special taxes payable during the year, and thereby parties who own lands in the district, by using them to pay the special tax, have an advantage over warrant-holders who do not owe such taxes. The statutes as they stand afford a means of unduly delaying the payment of a contractor who in good faith has constructed ditches for the district.

18. ———: **Additional Levy: One or More.** In this case, since a single additional levy of taxes sufficient to pay the contractor's legal warrants might result in undue hardship upon some landowners who did not participate in the effort to repudiate the just debt of the district, a levy of twenty per cent of the original estimated benefits for each of three years is ordered.

## Mandamus.

PEREMPTORY WRIT ISSUED.

*Edward C. & James W. Craig* and *Whiteside & Rutherford* for relator.

(1) This case is of sufficient magnitude and importance to justify the Supreme Court in taking original jurisdiction. State ex rel. v. Payne, 151 Mo. 663; State ex rel. v. Adams, 161 Mo. 349; State ex rel. v. Weeks, 93 Mo. 499; State ex rel. v. Slover, 113 Mo. 211; State ex rel. v. Johnson, 123 Mo. 43; State ex rel. v. Walbridge, 123 Mo. 541. (2) "The debt for which the warrants in controversy were issued, having been ascertained by being audited and allowed by the officers appointed by the law therefor, and the warrants being drawn on a special fund for the amount due, about which there is no controversy, and made payable out of a particular fund, no judgment is necessary as a condition precedent to the writ of mandamus as prayed for." Sheridan v. Fleming, 93 Mo. 321; State ex rel. v. Adams, 161 Mo. 349; State ex rel. v. Holt Co., 135 Mo. 543; State ex rel. v. Holt Co., 136 Mo. 474; State ex rel. v. Bollinger Co., 48 Mo. 475; People ex

rel. v. Getzendaner, 34 N. E. (Ill.) 303; Thomas v. Town of Mason, 26 L. R. A. (W. Va.) 727; High's Ex. Rem. (3 Ed.), secs. 347, 357, 369, 369a; Emery Co. v. Burreson, 37 L. R. A. (Utah), 732; 26 Cyc. 325h; Barnes v. Turner, 10 L. R. A. (Okla.) 478; City of Austin v. Cohill, 88 S. W. (Tex.) 552; 19 Ency. Law, (2 Ed.), 789-895; Flagg v. Palmyra, 33 Mo. 440; State v. Davenport, 12 Iowa 335; State v. Milwaukee, 25 Wis. 122; State v. Smith, 11 Wis. 65. (3) That the cost of the improvements contemplated and described in the topographical survey, when actually constructed, may or will exceed the amount of "benefits" estimated by the commissioners, does not deprive the owner of his property without "due process of law," or deny to him the "equal protection of the law." Barber Co. v. French, 158 Mo. 534; Heman v. Schulte, 166 Mo. 409; Prior v. Construction Co., 170 Mo. 439; Heman v. Gilliam, 171 Mo. 258; St. Charles ex rel. v. Deman, 174 Mo. 122; Meier v. St. Louis, 180 Mo. 391; Construction Co. v. Shovel Co., 211 Mo. 524; Corrigan v. Kansas City, 211 Mo. 609; Heman v. Railroad, 206 Mo. 172; Re Bonds of Madera Ir. Dist., 14 L. R. A., 755; Rolph v. Fargo, 42 L. R. A. 646; Smith v. Worcester, 182 Mass. 232, 59 L. R. A. 728; Railroad v. Seattle, 12 L. R. A. (N. S.) 121; Davidson v. New Orleans, 96 U. S. 106; French v. Asphalt Co., 181 U. S. 344; Mobile Co. v. Kimball, 102 U. S. 691; Magoun v. Ill. T. & S. Bank, 170 U. S. 283; Ziozza v. Tierman, 148 U. S. 657; Orr v. Gilman, 183 U. S. 278; Fallbrook Ir. Dist. v. Bradley, 164 U. S. 157; Spencer v. Merchant, 125 U. S. 345; Hagar v. Reclamation Dist., 11 U. S. 701; Lent v. Tillson, 140 U. S. 316; Paulson v. Portland, 149 U. S. 30; Bauman v. Ross, 167 U. S. 548; McCain v. Des Moines, 174 U. S. 168; Loeb v. Trustees, 179 U. S. 472; Williams v. Eggleston, 170 U. S. 304. (4) The statute under which Des Moines and Mississippi Levee District No. 1 was organized is not unconstitutional in that no notice is required to be given to landowners,

or a hearing accorded them on the assessment of bene-
fits after the organization of the district. Sec. 8366,
R. S. 1899; Secs. 9187, 9244, 9246, 9290 to 9323, R. S.
1899; State ex rel. v. Angert, 127 Mo. 456; St. Louis v.
Richeson, 76 Mo. 470; Kansas City v. Huling, 87 Mo.
203; Nat. Bank v. Carswell, 126 Mo. 436; Geormans v.
Riddle, 50 N. W. (Ia.) 890; Oliver v. Monona Co., 90
N. W. (Ia.) 514; McMillen v. Anderson, 95 U. S. 37;
Hagar v. Union Cal., 66 Hun (N. Y.) 179; Walston
v. Reclamation Dist., 11 U. S. 701; Schenectady v.
Nevin, 128 U. S. 578; Walker v. Sauvinet, 92 U. S. 90;
Davidson v. New Orleans, 96 U. S. 97; Spencer v.
Merchant, 125 U. S. 345; Allen v. Georgia, 166 U. S.
138; Orr v. Gilman, 183 U. S. 278; State ex rel. v.
Smith, 177 Mo. 69; Fallbrook Ir. Dist. v. Bradley,
164 U. S. 112; Mound City v. Miller, 170 Mo. 240;
Gallup v. Schmidt, 183 U. S. 300. (5) The pro-
visions of the statute under which this district was
organized, to the effect that the commissioners ''shall
make a list of the lands in said district to be bene-
fited, in whole or in part, and the amount of benefit
accruing to each piece separately, together with the
names of the owners thereof,'' do not contemplate
that the benefits, shall be necessarily the full benefits,
but is a distribution of the cost of the improvements
proposed, as estimated by the engineers, among
the several tracts of land, according to the propor-
tion of benefits to be respectively received by each
tract of land from the improvements and work con-
templated. Sec. 8365, R. S. 1899; Sec. 8366, R. S.
1899; Sec. 8369, R. S. 1899; 26 Ency. Law (2 Ed.), p.
640; State v. Able, 65 Mo. 362; State v. Addengton,
77 Mo. 110; State v. Pond, 93 Mo. 606; People v.
Hutchinson, 172 Ill. 486; U. S. v. Coombs, 12 Pet. 75;
Granada Co. v. Brogden, 112 U. S. 261; U. S. v. Rail-
road, 118 U. S. 235; People v. Onahan, 170 Ill. 460;
Cooley, Const. Lim. (1 Ed.) 181; Pierson v. Zehr, 125

Ill. 523; People v. Knopf, 171 Ill. 191. (6) The board of supervisors and engineer had the power and authority to extend Goose Pond ditch one-half mile further north, and relator's contract and warrants were not affected by such change. Sec. 9365, R. S. 1899; Lewis v. Dr. Dist., 25 N. E. (Ill.) 516; Whitworth v. Webb City, 204 Mo. 579; Water Co. v. Aurora, 129 Mo. 583; Devers v. Howard, 88 Mo. App. 253; State ex rel. v. Milling Co., 156 Mo. 620; Foncannon v. Kirksville, 88 Mo. App. 279; Waterworks Co. v. Joplin, 177 Mo. 496; Akers v. Kolkmeyer, 97 Mo. App. 520; Tingsley v. Brooklyn, 78 N. Y. 200; Mulholland v. New York, 113 N. Y. 631; Messenger v. Buffalo, 21 N. Y. 196; Endlich on the Interpretation of Statutes (1 Ed.), sec. 418. (7) Although it is contended, and even if it be held, that section 12 of article 10 of the Constitution of Missouri prevents and prohibits the Des Moines and Mississippi Levee District No. 1 from becoming indebted in any manner or for any purpose to an amount exceeding the amount of benefit, as estimated by the commissioners, yet the relator is within that provision of the Constitution, because at the time he contracted to excavate the canals or ditches, to-wit, June 26, 1906, there remained uncollected, unappropriated and unexpended of the amount of benefits estimated by the commissioners, and which was available to pay the relator on his contract, the sum of $29,048.20 which was more than the amount due him on his contract without interest. Patten v. Douglas Co., 87 Mo. 239; Book v. Earl, 87 Mo. 246; Barnard & Co., 105 Mo. 382; State ex rel. v. Wabash Ry. Co., 169 Mo. 576; State ex rel. v. Holt Co., 135 Mo. 545; Loesnitz v. Seelinger, 127 Ind. 422. (8) At least a two-thirds majority in interest of the landowners in the district signed the articles of association and stated therein that they were willing and obligated themselves to pay the tax or taxes that they might be assessed to pay the expenses to make the improvements that might

be necessary to effect the reclamation of the lands so formed into a district, and before and at the time of the letting of the contracts to relator, and during the time he was excavating the ditches thereunder, the board of supervisors and the landowners knew that the cost of the improvements provided for in the plan of reclamation would exceed the amount of benefits estimated by the commissioners under section 8365, and never at any time interposed any objections to the letting of said contract or the doing of the work provided for therein, and are now enjoying the benefits and advantages of the ditches, dug by relator, and have paid, without objection or protest, all assessments of benefits levied upon their lands since the organization of the district, and under the pleadings and the evidence in this case, the respondents and the owners of the land in the said district are each and all of them estopped from claiming, asserting or denying the validity of relator's contract and warrants issued thereunder, and each and all of them waived any provision of the Fourteenth Amendment to the Federal Constitution or any provision of the Constitution of the State, applicable thereto. Whitworth v. Webb City, 204 Mo. 579; Water Co. v. Aurora, 129 Mo. 540; Gas Co. v. San Francisco, 9 Cal. 469; Hitcode v. Galveston, 96 U. S. 341; Devers v. Howard, 88 Mo. App. 253; State ex rel. v. Milling Co., 156 Mo. 620; Foncannon v. Kirksville, 88 Mo. App. 279; Waterworks Co. v. Joplin, 177 Mo. 496; Akers v. Kolkmeyer, 97 Mo. App. 520; Kodish v. Assn., 151 Ill. 538; Westbrook v. Middlecoff, 99 Ill. App. 331; Coms. v. Smith, 233 Ill. 426; Co. of Coles v. Gohring, 209 Ill. 170; Seaman v. Levee Dist., 219 Mo. 1; Endlich on the Interpretation of Statutes, sec. 537, p. 756; 16 Cyc. 781; 25 Ency. Law (2 Ed.), 1205; Heman v. Ring, 85 Mo. App. 231; Huling v. Flagstone Co., 87 Mo. App. 349; 10 Ency. Law (2 Ed.), 230; People v. Chapman, 127 Ill. 387; Lafayette v. Fowler, 34 Ind. 146; Jenkins v. Stetler,

118 Ind. 277; Hill v. Ahern, 135 Mass. 158; Lundbom v. Manistee, 93 Mich. 170; Fitzhugh v. Bay City, 109 Mich. 583; Goodwillie v. Detroit, 103 Mich. 283; Richmond v. Nye, 126 Mich. 605; Hitchcock v. Galveston, 97 U. S. 659; Maher v. Chicago, 38 Ill. 271; DeWolf v. Chicago, 26 Ill. 446; Kent's Commentaries, p. 291; Johnson v. County, 24 Ill. 90. (9) The relator, on account of the inadequacy of the assessments heretofore made to complete the work proposed, is entitled to a writ of mandamus against the respondents to levy "additional or supplemental assessments against each tract of land of the levee district in proportion to the additional costs as its original assessments bore to the total original assessments," and is entitled to a writ of mandamus against the respondents to levy for the year 1910 the entire sum due the relator, which will be $31,763.89, on January 15, 1911, that being the earliest date he could realize on his warrants, or as much thereof as does not exceed twenty-five per cent of $55,000 for the years 1908, 1909 and 1910, less the ten per cent levied for the year 1908 and the ten per cent levied for the year 1909. Sec. 8366, R. S. 1899; Sec. 8369, R. S. 1899; State ex rel. v. Gordon, 217 Mo. 103; E. St. Louis v. Amy & Co., 120 U. S. 600; E. St. Louis v. People ex rel., 17 N. E. 449; Marion Co. v. Coler, 67 Fed. 64; Cleveland v. Calvert, 31 S. E. 872. (10) These respondents have no right to raise the question of the constitutionality of any assessment of taxes that may be levied upon the lands in the district to pay relator's warrants. Sec. 540, R. S. 1899; Henderson v. Konig, 192 Mo. 690; State v. Seebold, 192 Mo. 730; Cunningham v. Railway, 165 Mo. 276; Cooley's Const. Lim. (7 Ed.), 232; St. Louis v. Shields, 52 Mo. 357; Hovelman v. Railroad, 70 Mo. 632; State ex rel. v. McIntosh, 205 Mo. 589; State ex rel. v. St. Louis, 207 Mo. 355; Roeder v. Robertson, 202 Mo. 523.

*Hazen I. Sawyer, C. T. Llewellyn* and *Frank Hagerman* for respondent.

(1) There can be no recovery because the assessments sought to be enforced are in excess of the benefits ascertained. To so permit would take the property of the landowner without due process of law, thereby violating the State (art. 2, sec. 30) and Federal (14th Amendment) Constitutions. (2) The power to make special assessments rests solely upon the special benefits created. Without the benefit there can be no assessment. Cooley on Taxation (2 Ed.), 606; 2 Dillon, Mun. Corp. (4 Ed.), 933, sec. 761; 2 Page and Jones, Taxation by Assessment, secs. 677, 678, pp. 1167, 1168; Thomas v. Gavin, 35 Mich. 155; Sears v. Boston Street Comrs., 173 Mass. 350; Neenan v. Smith, 50 Mo. 525. (3) There is no legislative declaration of benefits as in the case of paving, but benefits are ascertained by a *quasi* judicial inquiry. Sec. 8365, R. S. 1899. It is to be observed that no benefits can be ascertained until after the plan has been adopted, and the location of the improvements has "been determined upon." This plan and this location are conditions precedent and the question submitted to the *quasi* judicial tribunal is how much and to what extent is each separate piece of property benefited by that particular plan and the location of the improvements thereby and thereon shown. Unless this tribunal so ascertains the benefits, they never are fixed either by the Legislature or any subordinate tribunal. It therefore follows that unless the benefits are ascertained by this section, no benefits can be said ever to have been found or even declared to exist. Kansas City v. Bacon, 147 Mo. 281; Jones on Taxation by Assessment, secs. 671-674. (4) The assessments cannot exceed the benefits. 25 Am. and Eng. Ency. of Law (2 Ed.), 1169, 1184, 1194-95; 2 Jones & Page on Taxation by Assessment, secs. 665, 678; Tyler v. St.

Louis, 56 Mo. 60; 2 Dillon, Mun. Corp. (4 Ed.), 936, sec. 761; Zoeller v. Asphalt Co., 4 Mo. App. 163; Otter v. Asphalt Co., 96 S. W. (Ky.) 862; Cooley on Taxation (2 Ed.), 661; Adams v. Shelbyville, 154 Ind. 467; Hanscum v. Omaha, 11 Neb. 41; Atlanta v. Hamelin, 90 Ga. 381; Sterling v. Galt, 117 Ill. 19; Davis v. Litchfield, 145 Ill. 326; Davies v. New Orleans, 40 La. Ann. 806; White v. Stevens, 67 Mich. 33; State v. District Court, 29 Minn. 62; Reynolds v. Patterson, 48 N. J. L. 435; State v. W. Hoboken, 51 N. J. L. 267; Frevert v. Bayonne, 63 N. J. L. 202; Allison Co. v. Tenafly, 68 N. J. L. 205; Wewell v. Cincinnati, 45 O. St. 424; Stuart v. Palmer, 74 N. Y. 189; Chamberlain v. Cleveland, 340 St. 562; Walsh v. Baron, 61 O. St. 15; Dexte v. Boston, 176 Mass. 247. (5) Section 8366, which authorizes the assessment, limits the same to each acre so found to be benefited. These benefits may not have been the same as to adjoining pieces. There is not a word in the section authorizing more than 100 per cent to be levied. There is no provision that 25 per cent can be levied for each of the first four years and therafter additional levies. Such a provision would be unconstitutional. There is simply a limitation that in no one of the first four years shall a levy be in excess of 25 per cent. The limitations in section 8366 apply to section 8369. If by any possibility section 8369 could be construed as not being limited by the benefits first assessed under section 8365, it necessarily follows there must be an additional finding of benefits. These benefits have neither been legislatively declared nor authorized, and the language of the section is that "when the assessments hereinbefore made shall be inadequate to complete the work proposed . . . additional assessment shall be made by the board of supervisors in the same manner as the original assessment was made." This manner was by the ascertainment of the benefits under

235 Sup.—18

its direction (section 8366) upon the plan proposed, and then an assessment in accordance therewith (section 8366). It seems therefore that either section is limited to the benefits first found, or else there must be a new ascertainment, for which there is no provision of law. (6) There can be no recovery because of substantial departures from the plan and amount of the estimate. It has been repeatedly decided that wherever a statute authorizing special assessments required that plans and an estimate should be first made, this was a condition precedent, and there could be no assessment whatsoever unless the law in this respect were complied with. Frosh v. Galveston, 73 Tex. 401; Dallas v. Ellison, 10 Tex. Civ. App. 28; Kerr v. Corsicana, 89 Tex. 461; Myrick v. La Crosse, 17 Wis. 442; Kneeland v. Milwaukee, 18 Wis. 411; Pound v. Supervisors, 43 Wis. 63; Gilmore v. Hentig, 33 Kan. 156; Hentig v. Gilmore, 33 Kan. 234; McKennan v. Indianapolis, 38 Ind. 223; Fiedenwald v. Shipley, 74 Md. 220; Ackerman v. Bergen, 33 N. J. L. 39; Erie v. Brady, 150 Pa. 462; Merritt v. Portchester, 71 N. Y. 309; Llewellyn v. Proetzel, 80 Tex. 195. This doctrine has always been recognized in this State. Kiley v. Oppenheimer, 55 Mo. 374; Westport v. Mastin, 62 Mo. App. 654; Nevada v. Eddy, 123 Mo. 540. It is well settled in this State that a law is to be construed as mandatory where it requires a previous estimate and forbids a contract for more than the amount thereof. Independence v. Briggs, 58 Mo. App. 241; Marshall v. Rainey, 78 Mo. App. 416; De Soto v. Shawman, 100 Mo. App. 323; Kirksville v. Coleman, 103 Mo. App. 215; Wheeler v. Poplar Bluff, 149 Mo. 36. (7) A substantial departure from the plans is not permissible. If plans and estimates are necessary as a condition precedent, then there cannot thereafter be any substantial change therein without making a new plan and starting anew the proceedings. Argentine v. Summers, 53 Kan. 491; Mason v. Sioux Falls,

2 S. D., 640; Columbus v. Storey, 35 Ind. 97; Knee-
land v. Milwaukee, 18 Wis. 411; Brick Co. v. Hamil-
ton, 51 Mo. App. 125; Kansas City v. Askew, 105 Mo.
App. 87.

BROWN, J.—The relator is a citizen of Illinois
and respondents compose the board of supervisors of
the Des Moines and Mississippi Levee District No. 1.
This action is prosecuted to compel respondents to
levy a special tax to pay warrants issued to relator
for excavating certain ditches for said levee district.

The Des Moines and Mississippi Levee District 1,
hereinafter designated as the Levee District, was in-
corporated in 1903 under the provisions of article 7,
chapter 122, Revised Statutes 1899 (now article 9,
chapter 41, Revised Statutes 1909), and embraces
about 11,000 acres of land in Clark county, Missouri,
subject to overflow by the Mississippi, Des Moines
and Fox rivers.

It stands admitted that all necessary steps were
taken through the circuit court of Clark county to
organize this levee district; that its officers were duly
elected; that a topographical survey of all the lands
therein was made by a civil engineer, as required by
section 8364, Revised Statutes 1899 (sec. 5706, R. S.
1909). That said engineer prepared plans, maps,
specifications and estimates for reclaiming and pro-
tecting from overflow the aforesaid 11,000 acres; and
also that three commissioners were appointed to as-
certain and assess against the several tracts of land
in the district the benefits which said commissioners be-
lieved such lands would receive from the excavation
of ditches and the building of levees, as planned by
said engineer.

It is admitted that some levees were constructed
along the south side of the Des Moines river in 1872
to protect from overflow the lands which are now
within the levee district.

The plans and estimates prepared by the engineer and filed with the board of supervisors called for expenditures as follows:

Excavating ditches, 53,250 cubic yards of dirt, at 10 to 14 cts. per yard...........$ 7,175.00

Building Des Moines river levees, 194,824 cubic yards of dirt at 10 cts. per yard.. 19,482.00

Building Fox river levees, 232,113 cubic yards of dirt at 10 cts. per yard ........23,211.00

Expense of survey, superintending work, sewer pipe and other incidentals ......5,132.00

$55,000.00

Up to this point, the legality of the proceedings which led up to this litigation are not challenged; but the engineer who made the plans for draining and protecting the lands of the levee district underestimated the actual cost of excavating the necessary ditches and building levees, to the extent of about $25,000; and this error on his part, together with an unanticipated overflow, which destroyed about $5000 worth of levees produced the deficit which resulted in this action.

The commissioners appointed under section 8365, Revised Statutes 1899 (Sec. 5707, R. S. 1909), assessed the benefits supposed to accrue from the aforesaid ditches and levees at $55,000, and apportioned said assessment among the several tracts of land in the levee district.

During each of the years of 1904, 1905, 1906 and 1907 the board of supervisors assessed twenty-five per cent of the benefits (ascertained as aforesaid) against the lands of the district, and these assessments yielded $13,750 annually, aggregating for the four years the sum of $55,000. In the year 1905 an overflow of the Des Moines river washed away part of certain levees theretofore existing, to replace which necessitated an unanticipated expense to the district of $5000. This expense was paid out of assessments levied to pay for new work on levees and ditches called

for in the surveyor's estimate, and thereby reduced the "benefit" fund to $50,000.

In the year 1905 one Cortez Johnson, under an appointment of the board of supervisors, let contracts to sundry persons for building levees along the Des Moines river. The record does not recite at what price these contracts were awarded, but we gather from the evidence that the work contemplated by the same as all completed and paid for prior to May, 1906, at which time the district had expended for all purposes only the sum of $25,076.91. This apparently left of the "benefit" fund about $29,929.09 unexpended.

While the financial condition of the levee district was in this condition, the board of supervisors in May, 1906, employed one W. B. Hazen to make further contracts for draining and protecting the lands of the district from overflow, and on June 26, 1906, after due advertisement, said Hazen awarded to relator a contract to excavate two ditches, one designated as Goose Pond ditch, and the other as Hill Slough ditch, at 15¼ cents per cubic yard of dirt to be excavated. The aggregate amount of dirt removed in digging these ditches was 177,187 cubic yards, and the aggregate cost thereof was $27,021.40. This contract did not call for more money than the unexpended benefits hereinbefore recited; but had relator been paid for his work, there would have been left only a little over $2000 in said "benefit" fund; whereas the estimated cost of levees along Fox river was $23,211.30.

Notwithstanding the "benefit" fund would have been nearly exhausted by paying for the ditches contracted to the relator, the board of supervisors through their agent Hazen at once proceeded to contract with sundry persons to construct levees along Fox river, as originally planned, with the result that when relator completed the work awarded to him, and the Fox river levees were also completed, the levee district had created an indebtedness of about $30,000

in excess of the $55,000 originally estimated by the topographical survey made in the year 1903.

Warrants were issued by the levee district to the several contractors as their work progressed, and the builders of the Fox river levees seem to have sold their warrants to landowners for use in paying levee taxes assessed for the years 1906 and 1907, as provided in sections 8265 and 8367, Revised Statutes 1899 (Secs. 5541 and 5710, R. S., 1909).

While relator's contract antedated those made with parties who constructed levees along Fox river, the tax levies for 1906 and 1907 were so nearly consumed by the warrants issued for the Fox river levees and accepted in payment of taxes, that relator only received $664 for his entire work, and the remainder of his warrants, $26,356.74, were protested by the treasurer of Clark county, for want of funds to pay the same.

In February, 1909, relator made a written demand upon respondents to order an assessment upon the lands of the district to raise funds to pay his warrants; but respondents refused to order a levy to pay said warrants, or any part thereof. A majority of the voters of said levee district at the annual meeting in February, 1909, also refused to vote a levy to pay relator's warrants. Whereupon relator brought this action to compel respondents to make a levy to meet his warrants.

It appears that the ditches excavated by relator are not in all respects like the ditches contemplated by the original topographical survey upon which the benefits were assessed by the commissioners; but as the map of the levee district attached to relator's petition does not designate by name the several sloughs, ponds, roads and rivers referred to in the estimates, contracts and evidence, we find it difficult to ascertain just how much variance there is between the ditches as planned and those excavated by the relator.

We are able, however, to understand that what is called Goose Pond ditch was commenced a half-mile further north than originally planned, and was so constructed as to carry off the waters of Rutherford pond and Leonard slough, which by the original plans, were intended to be drained through what is known as Hill's slough. The additional cost of this half-mile ditch was $1273.99, but such change of plans appears to have rendered unnecessary the digging of a ditch from Leonard slough to Hill's slough, estimated to cost $700, but which might have cost twice that sum if we are to judge by the miscalculations of the topographical surveyor regarding other work estimated by him.

This particular change of plans was rendered desirable by the discovery, after the topographical survey had been made, that a "sand cut" was forming at or near the north end of Goose Pond ditch, which would have rendered it impossible to keep that ditch open, without bringing through it the waters of Leonard slough. This change of plans, however, brought so much water through the Goose Pond ditch as to render necessary an unestimated expenditure of $3000 to construct levees along that ditch.

The other work performed by relator consisted of deepening a slough or ditch already in existence; and no complaint is made that this work was not done in the place originally planned.

The original plan for these ditches called for a width of six feet at the bottom, with a slope of two to one of the walls thereof, and evidently contemplated that they should be excavated with scrapers; but at the time of letting the contract, it was found that the ground was too wet to handle with scrapers, consequently the engineer and all the board of supervisors were of the opinion that these ditches should be excavated with a floating dredge boat, and made twelve

feet wide at the bottom, with a slope of only one to one in the walls.

There is substantial evidence that this change in the slope of the walls of the ditches and the widening of the bottoms thereof only entailed an additional expense of about $300, but it will be observed that through miscalculations of the topographical engineer the excavation of these ditches required the removal of 177,187 cubic feet of dirt instead of only 53,250 cubic feet, as originally estimated. The estimate of the engineer who made the topographical survey placed the cost of excavating these ditches at 10 to 14 cents per cubic yard, while relator's contract called for $15\frac{1}{4}$ cents per cubic yard, and by reason of this increased cost per yard of dirt, as well as the greatly increased amount of dirt removed above the amount estimated to be necessary, these ditches cost $27,021.41 instead of only $7175, as originally estimated.

While relator was excavating the ditches under the contract awarded to him, several of the landowners of the district made complaint to his foreman about the excessive cost of the ditches; but none of them took any legal action for redress of any injury which resulted to them from the awarding of contracts calling for a greater expenditure of moneys than called for by the topographical survey and estimates before mentioned.

Relator claims that in making his bid for this work he was not shown the original plans of the topographical engineer, and knew nothing of any change of plans, and the evidence sustains his contention on this point. The relator testifies that very soon after the contract for excavating ditches was awarded to him, he caused his attorney to investigate the legality of his contract with the levee district.

Relator's contract was let to him upon fair com-

petitive bidding, and there is no complaint that the supervisors of the district or the engineer were not acting in good faith when they changed the plans of the ditches and entered into the contract with relator. Neither is there any evidence that relator failed to execute his contract in the utmost good faith.

Respondent's amended return to the alternative writ, sets up the following defenses:

1st. The facts alleged and proven by the relator are not of sufficient importance to warrant this court in assuming jurisdiction of the cause.

2d. Relator's warrants have not been reduced to judgment.

3d. The total cost of improvements made by the levee district exceeds the benefits assessed, and to enforce the payment of relator's warrants would result in depriving the landowners of the district of their property without due process of law—contrary to the 5th and 14th Amendment to the Federal Constitution.

4th. That the landowners were given no notice of the assessment of benefits upon their lands.

5th. That the aggregate of improvements made by respondents in protecting and draining the lands in the district amount to $35,000 more than the benefits assessed for said improvements; and as taxes equaling the amount of the benefits have already been levied and collected, no further levy can be made to pay for such improvements.

6th. Relator's contract called for the expenditure of money in excess of the benefits assessed as aforesaid.

7th. That the relator's contract called for the construction of ditches and other work not embraced in the original plans and estimates for draining and protecting the lands of the district.

8th. That the relator's contract called for the construction of ditches of a different character from those

set out in the plans and specifications upon which the benefits were ascertained and assessed.

9th. That a majority of the voters of said district have refused to authorize the levy of a tax to pay the relator's warrants.

10th. That relator's warrants are void because the law does not authorize a contract calling for pay-ment in warrants.

11th. That relator's said contract being void, the warrants which relator now seeks to collect are likewise void.

## OPINION.

I. We are inclined to hold that the facts in this case are not of sufficient public importance to warrant this court in assuming jurisdiction of the action. This is only one of innumerable cases where a litigant having a complete right to go into the circuit court for relief, has sought to jump over the head of that tri-bunal, dodge the inconvenience of a trial by jury and obtain more speedy relief by an original action in this court at the expense of hundreds of other worthy litigants who have entrusted their rights to the trial courts, and who are before us by appeals or writs of error.

While the alternative writ should have been denied without prejudice when the same was applied for, or the action dismissed when the respondents filed their reply, we feel it would now be a great injustice to send the relator to the circuit court after the expense of appointing a commissioner, the taking of testimony and the presentation of the case to this court. We will therefore retain jurisdiction and dispose of the case.

II. The respondents' contention that this court is powerless to grant the relief demanded because re-lator has not reduced his warrants to a judgment, must be overruled. In this action, respondents have had an

opportunity to attack the validity of relator's warrants by a thorough investigation of all the facts which led up to the issue of same; and all the issues tendered by respondents having received diligent consideration, they have now had their day in court, and the case must come to a close. [State ex rel. v. Holt County Court, 135 Mo. 533.]

III. In support of their contention that the levee district could not legally incur indebtedness in excess of the $55,000 assessed by the commissioners as the probable benefits to be derived from the construction of levees and ditches, respondents cite us to more than one hundred decisions of State and Federal courts; but upon examination, we find that most of these cases relate to actions construing laws and contracts for the improvement of streets and sidewalks.

Ordinarily, when a street or sidewalk is to be improved, the statute regulating such improvement provides that an estimate shall be made of the costs thereof and the amount of such costs taxable against the property of each abutting landowner; and such statutes usually prohibit in express terms the letting of contracts for such improvements at prices in excess of their estimated cost. [Secs. 9254 and 9407, R. S. 1909.] Many of the cases cited by the learned counsel for respondents involve the construction of statutes similar to those last mentioned, and are a sound interpretation of that class of laws. But the statute now under consideration by us does not prohibit the levy of taxes in excess of the estimated benefits to be obtained by building levees and excavating drainage ditches. On the contrary, the very statute under which relator performed the work for which he now seeks payment, sections 8366 and 8369, Revised Statutes 1899 (Secs. 5709 and 5712, R. S. 1909), provides that additional levies may be made to complete improve-

ments after the full benefits assessed have been collected from the lands in the levee district.

Section 8369, Revised Statutes 1899, provides that: "When the assessment heretofore made [meaning the annual levy of 25 per cent of the benefits during a period of four years] shall be inadequate to complete the work proposed [meaning the work estimated and designated as necessary by the topographical survey], or when assessments shall be necessary for maintenance and repair, each tract of land shall be assessed such proportion of the additional cost as its original assessment bore to the total original assessment, and the said additional assessment shall be made by the board of supervisors in the same manner as the original assessment was made, and in all subsequent matters in relation thereto the same proceedings shall be had as hereinbefore required in regard to original assessments."

If the law had provided that the plans for building levees and excavating ditches to drain overflowed lands should be made and the cost thereof estimated before the levee district could be organized, the respondents' contention would rest on a more reasonable basis; because it might be inferred that the landowners would not have organized the district had they known the exact amount it would cost. But such is not the case. The law provides that the owners of two-thirds in area of lands to be incorporated into a levee district must first organize and sign articles of association, reciting that they "are willing and obligate themselves to pay the tax or taxes that may be assessed to pay the expenses to make the improvements that may be necessary to effect the drainage of such lands so formed into a district," as provided by law. [Secs. 8361 and 8251, R. S. 1899; Secs. 5703 and 5496, R. S. 1909.]

It will thus be seen that the incorporators of a levee district voluntarily burden their lands situate

therein with whatever amount of taxes may be required to effectuate their drainage and protection from overflow; and such incorporators cannot be heard to say that their lands shall not be taxed in excess of a sum to be thereafter estimated by a person selected to make a topographical survey. [People ex rel. v. Knopf, 171 Ill. 191, l. c. 199.]

Persons having lands within the district, but who do not sign the articles of association, upon being summoned or notified, may resist the organization of the district, or the inclusion therein of their lands. [Secs. 8253 and 8362, R. S. 1899; Secs. 5499 and 5704, R. S. 1909.] But if the court, upon a full hearing of the matter, finds that the organization of the district is necessary and in its opinion advantageous to the lands therein, and that the lands owned by the parties objecting to the creation of such district should be embraced therein, then the lands included in such district, contrary to the wishes of the owners thereof, become subject to the same regulations and burdens of taxation as lands which are annexed to a city or any other municipal body, against the wishes of their owners.

When, as in the case at bar, the person selected by the board of supervisors to make the survey, plans, estimates and specifications for draining and protecting lands of the levee district, miscalculates the amount of money required to build the levees and excavate the ditches, whereby it becomes necessary to raise by taxation a large additional sum to pay for such levees and ditches, the landowners are sorely disappointed because forced to expend more for the protection of their lands than they had been led by the surveyor's report to anticipate; however, they have no more cause to complain than a man who undertakes to build a house, supposing it will cost $1000 and finds to his grief that when completed it has cost him $1600. People who enter into the laudable undertaking of

saving and protecting their lands from the ravages of overflow waters, will always be subjected to more or less disappointments because of unforeseen difficulties and expenditures which it is impossible to estimate with precision.

No one can look into the earth and determine with accuracy what it will cost to make an excavation therein; but such is not the case in making improvements on the surface of streets and sidewalks in a town or city. Under the latter conditions, an engineer deals only with the seen and knowable; while in estimating excavations for drainage ditches, he to some extent deals with matters he cannot see or fully understand. Hence, we do not consider cases governing the improvement of sidewalks and streets as throwing any light upon the statutes which we are now called upon to construe; and we must therefore rule that the expenditure by the levee districts of $30,000 more than was estimated to be necessary to drain and protect the lands therein, does not invalidate relator's warrants, and the levy and collection of sufficient taxes to pay said warrants will not amount to the depriving of landowners of the levee district of their property without due process of law. [Mound City Land & Stock Company v. Miller, 170 Mo. 240; State ex rel. v. Bugg, 224 Mo. 537, 1. c. 563; Sheridan v. Fleming, 93 Mo. 321; French v. Barber Asphalt Company, 181 U. S. 324; Hagar v. Reclamation District No. 108, 111 U. S. 701.]

The case of Sheridan v. Fleming, 93 Mo. 1. c. 324, construed a drainage law quite similar to the one now in judgment. It required taxes to pay for drainage to be levied upon estimates to be prepared by commissioners; and in deciding that case, this court said: "There is nothing in the act which limits the amount to the estimate first made by the commissioners. The law does not contemplate that they must in the first instance, report the exact amount of the work. It

would be impossible for them to do this, for they must pay for surveys, condemnation of property and the like, all of which expenses must be paid out of the fund. Neither these expenses, nor the cost of the work, can be ascertained with accuracy in advance. Besides, the contractor has nothing to do with the estimate; and to say that he must go unpaid because of a mistake of the commissioners in a matter over which he has no control is manifestly unjust. The law contemplates no such results.''

The case of Hagar v. District, supra, 111 U. S. 701, construed a drainage statute of the State of California, which statute is in all respects much like the one now under consideration. In that case a drainage district of 74,000 acres was formed, and the commissioners appointed for that purpose assessed the benefits to be derived to the landowners from the drainage of their lands at $140,000. After taxes had been levied and collected to the full amount of these benefits, it was found necessary to raise the further sum of $192,000 to complete the drainage work undertaken by the district, whereupon the said further sum of $192,000 was by the commissioners assessed against the lands in the district; and additional taxes levied to raise said last-named amount. Such additional taxes were upheld against the plea that their collection would violate the Fourteenth Amendment to the Federal Constitution, which provides that, ''No state shall deprive any person of . . . property without due process of law.''

IV. The complaint of respondents that landowners of the levee district were not notified of the assessment of benefits against their lands, does not deserve serious consideration. There is no statute requiring such notice to be given. The law directs that all landowners who do not sign the articles of association must be notified of the intended incorporation

of the district. In this case all the landowners who did not sign the articles of association were duly served with process, or notified by publication of the proceeding to incorporate; and being once called into court, they, as well as the parties who signed the articles, were required to take notice of all subsequent proceedings leading up to the drainage of the district, including the assessment of benefits against their lands. This doctrine finds support in the case of State ex rel. v. Wilson, 216 Mo. l. c. 284 and 285. In the case at bar, the landowners of the district undoubtedly had full knowledge of the benefits assessed against their lands, because they had paid two years' taxes based on said benefits before the levee district entered into the contract with relator to excavate its ditches; and as they paid taxes during two additional years thereafter without protest, and thereby acquiesced in said assessment of benefits during a period of nearly five years, we think that they fully ratified the assessment of benefits against their lands, and should not now be heard to complain that they were not notified thereof.

V. The fact that special taxes have already been levied by the district and collected from the landowners equal to the amount of benefits assessed by the commissioners, is no bar to an additional levy to meet the unpaid warrants of relator. We have given some of our reasons for this view under paragraph 3. When the several sections of article 9, chapter 41, Revised Statutes 1909, are read together, the legislative intent to authorize the expenditure of money in excess of the benefits assessed by the commissioners is perfectly clear. The very nature of the subject calls for the conclusion that benefits to be derived by excavating ditches and constructing levees to protect and drain overflowed lands, like the cost of such improvements, can never be estimated with mathematical accuracy. The chief end to be ascertained in making the estimate

and assessing benefits is to determine the proportionate gain which each landowner in the district will receive from the building of levees and the excavation of ditches, in order to enable the commissioners to equitably apportion the cost of such levees and ditches among such landowners, and also to provide a plan for extending taxes to pay for levees and ditches over a period of four years, instead of making the whole cost of such improvements payable in one year.

In State ex rel. v. Bugg, 224 Mo. 537, l. c. 557, this court held that notwithstanding the benefits assessed for improvement of a drainage district had been exhausted in digging ditches, a new district could be legally formed covering the same lands as the old district, and additional taxes levied to deepen and enlarge ditches which had proven insufficient.

By what is herein said, we do not wish to be understood as implying that, by the mere act of incorporating a levee district, such district would be bound to let contracts and levy taxes in excess of what the lands of the district would be worth when drained and protected. It is easy to understand that all the landowners of the district might discover and become convinced after the district was organized, that they had undertaken the impossible, and that their lands could not be saved and protected by any kind of levees. In such a case, landowners would undoubtedly have a remedy; but that is not this case, and we express no opinion except upon the facts now before us. However, by the very act of incorporating the district the landowners thereof say to the world that their lands are susceptible of being profitably drained and protected; and it will be presumed, until the contrary is clearly shown, that such is the condition of said lands. After landowners have suffered contracts to be let under the supervision of their duly authorized officers, the board of supervisors, they will not be heard to

235 Sup.—19

complain that the collection of such taxes as are needed to pay for the work performed under such contracts will amount to taking their property without due process of law. This is especially true where, as in this case, there is no proof of fraud or collusion between the contractor and the officers of the levee district, and the work of excavating ditches has been faithfully performed.

VI. There is nothing in the charge that relator's contract called for the expenditure of money in excess of the benefits assessed, because the proof shows that when the contract was awarded to relator there was still an unexpended balance in the benefit fund sufficient to pay for the work which relator contracted to perform, and there were then no uncompleted contracts for improvements outstanding.

VII. Respondents contend that relator's contract is invalid because it provides for the excavation of a half-mile of ditch from Rutherford's Pond to Goose Pond, not called for in the original plans and specifications of the topographical survey, upon which benefits were assessed. This change of plans and specifications was deemed by the board of supervisors and their engineer to be absolutely necessary on account of the discovery, after the topographical survey had been made, that a "sand cut" was forming at the head of Goose Pond ditch, and that unless more water was brought through that ditch, it could not be kept open. This change seems to have been made by the board of supervisors and their engineer in good faith, and we cannot see any good reason why it should invalidate relator's contract. Rivers which overflow their banks often produce results of the most unusual and unforeseen character. Many towns and small cities in our State which were by their founders thought to be entirely beyond the reach of and altogether immune from injury by adjacent rivers, have

been undermined, destroyed, or rendered uninhabitable by the seemingly capricious action of such rivers. In some cases, no amount of intelligence can foresee, and no amount of money, however judiciously expended, will thwart the devastating force of angry streams.

Courts take judicial notice of all these things and realize that those who embark in the trying task of curbing the natural course of rivers have almost as difficult a job as those whose duty it is to extinguish fires; and hence, laws regulating levees and drains should be considered so as to allow a reasonable degree of discretion to persons whose duty it is to put them into action, so long as such persons act in good faith.

When a change of the plans prepared by the topographical surveyor is made after benefits have been assessed, we can readily understand why a reassessment of benefits might become necessary, for the reason that such change might materially affect the benefits which some of the landowners would derive. In fact, a change of plans might in some cases work gross injury to some lands which according to the original plans would have been benefited. In such cases, the landowners whose property would be injuriously affected by a change of plans would undoubtedly have a right to compel a modification of or reassessment of benefits before any contracts were let or taxes collected for improvements.

However, no such facts enter into the case at bar. The evidence clearly proves that relator never saw or heard of the original plans prepared at the time the topographical survey was made until after he had entered into his contract to excavate the ditches for which he now seeks compensation; that no plans were shown to him by the engineer or supervisors except those prepared after the original plans had been changed. The letting of the contract under which these ditches were dug was fully advertised in a newspaper

published in the levee district and otherwise, and land-
owners should have interposed their objections at the
time of or before the contract was awarded to relator,
and not after the extra half-mile of ditch of which they
now complain, had been excavated.

VIII. The further insistence of respondents that
relator's warrants are void because the ditches ex-
cavated by him were of a different size and shape from
those proposed in the original plans and specifications,
stands on about the same foundation as their objec-
tions to the extra half-mile of ditch mentioned in para-
graph 7. The original topographical survey called for
ditches six feet wide at the bottom with a two-to-one
slope of the walls; whereas the ditches contracted to
and excavated by the relator were twelve feet wide at
the bottom, with walls having a one-to-one slope. It
is apparent that the original plans contemplated the
excavation of these ditches with plows and scrapers,
but Mr. Hazen, the same engineer who made the topo-
graphical survey, testifies that both he and the board
of supervisors became convinced that the ground was
too wet to excavate with scrapers, and hence were
forced to have the ditches dug by a floating dredge
boat. This made it impossible to give the walls of the
ditches a two-to-one slope; consequently, they decided
to make the bottoms of the ditches wider so as to ac-
comodate the same flow of water as originally contem-
plated. There is no evidence that this change in the
shape of the ditches has resulted in any material harm
to the landowners for the reason that the relator is
to be paid by the cubic yard of earth excavated, and
the proof shows that the ditches as excavated cost
only about three hundred dollars more than they would
have cost had they been excavated wider at the top and
narrower at the bottom—as originally planned.

The respondents have fallen into the error of sup-
posing that laws relating to the drainage and protec-

tion of overflowed lands should receive the same narrow and restricted construction as general laws governing the assessment. and collection of the revenue. Such construction does not apply to drainage laws. In the case of State ex rel. v. Bugg, 224 Mo. l. c. 554, Judge Fox, in an opinion concurred in by all the members of this court, said: "Legislation upon the subject of drainage of wet and swamp lands located in different portions of this State, had in view a great public purpose, that is, of accomplishing results which would be conducive to the public health as well as to the convenience and welfare of the people of this State. Therefore, the provisions enacted by the lawmakers of this State for the purpose of accomplishing the results as indicated, should not. be confined, by a technical construction, within an extremely narrow compass. Such construction should be placed upon provisions of that character as will be in harmony with the intent of the lawmaking power, and which will facilitate the accomplishment of the purposes indicated by the legislative enactment upon the subject in hand."

IX. That a majority of the voters residing in the levee district did not at the annual meeting authorize the imposition of a tax to pay relator's warrants, we do not consider a sufficient reason to justify respondents in refusing to levy such tax. It is true that the letter of the law seems to require the vote of a majority of the taxpayers to authorize the supervisors to levy 25 per cent of benefits, after the full amount of benefits have once been collected from the landowners of the district; but from what we have heretofore said, it is apparent that relator's warrants are valid, and the statute having provided a method whereby the levee district procured relator's labor and issued to him valid warrants therefor, respondents must order the necessary levies to pay same. We cannot imagine that any legislative body would intend to provide for the creation of a valid indebtedness and at the same

time devise a scheme whereby the debtor could repudiate such obligation. As will be seen in our statement of the facts in this case there were enough unappropriated or unused benefits at the time the district employed relator to excavate its ditches to pay relator for the work contracted to him, and the levee district will not be permitted after receiving the fruits of relator's labor to turn him away empty-handed with no better excuse than that they used the benefit fund with which he ought to have been paid in paying for work awarded to other parties.

In the case of State ex rel. v. Holt County Court, 135 Mo. l. c. 545, it was urged by respondents that some of the lands in the district had been sold to pay drainage taxes, that some landowners had paid their taxes in full while other owners had refused to pay a drainage tax and presumably had defeated the collection of such taxes levied upon their lands, and that under such conditions it would be unjust to levy an additional tax upon all lands of the district to pay a warrant issued for drainage work. In overruling this defense, ROBINSON, J., speaking for this court, said: "Neither the relator nor his assignor had anything to do with the matter of the estimate, the assessment, the levy or collection of the tax, and to hold that he is without a remedy and must go unpaid because of a miscalculation or mistake of the county court, or the dereliction and indifference of the collector, or the dodging of the taxpayer, is a proposition that ought to contain its refutation in its utterance."

It is the law of our State that when a municipality has contracted a valid debt its officers cannot be allowed to repudiate such obligation by refusing to levy the necessary taxes to pay same.

X.    Respondents' contention that relator's warrants are void because the law does not contemplate that he should be paid in warrants   for   excavating

ditches, is not tenable, because sections 8367 and 8368, Revised Statutes 1899 (Secs. 5543 and 5544, R. S. 1909) expressly provide for the issue of warrants for the indebtedness legally incurred by the district.

XI. Relator's contract with the district was valid, and it follows that his warrants issued for work performed under such contracts are likewise valid.

XII. The respondents having refused to make any levy during the years 1909 and 1910 to meet relator's warrants, relator now contends that this court should order a levy of 55 per cent of the original benefits assessed, in order that a sufficient sum can be collected from the landowners during the year 1911 to pay the entire amount due relator. While the action of respondents in refusing to levy any tax to pay relator's warrants, thereby forcing him, without fault on his part, to resort to the courts for relief, would afford a justification for the levy of 55 per cent of the benefits heretofore assessed, yet in view of the fact that such a levy might result in undue hardship upon some of the taxpayers who did not participate in the effort to repudiate the just debt of the district, we will only order a levy of 25 per cent of the benefits for 1911, with a like levy for the year 1912, and for the year 1913 a sufficient sum to pay such of relator's warrants and the interest thereon as may not be met and redeemed by the levies ordered for 1911 and 1912.

That provision of the levee laws making warrants of the district receivable on levee taxes the same as county warrants are receivable for county taxes, sections 8367 and 8365, Revised Statutes 1899 (secs. 5710 and 5711, R. S. 1909), is incapable of full enforcement. The law making county warrants receivable for county taxes (Sec. 3800, R. S. 1909) provides that county warrants can only be received for taxes of the year during which such warrants are drawn; and this works out satisfactorily, because county warrants cannot be legal-

ly issued in excess of the county revenue for each year. However, no such rule applies to the issue of warrants for building levees and excavating ditches. When once a levee or ditch is begun, it must, to become effective, be completed with all convenient speed; and this will often result in the issue in one year of enough, or more than enough warrants, to consume the tax levies of four years. This gives parties who own lands in the district an opportunity to collect their warrants promptly, by using such warrants in payment of their taxes; but leaves other warrant-holders who do not owe such taxes to wait an unreasonable time for their money.

Relator's contract antedated the contract made with parties who constructed the Fox river levees, and his warrants should have been paid first; but through the inequitable workings of the law, permitting warrants to be received for levee taxes, the builders of the Fox river levee received their pay more than two years ago; while the relator has not yet been paid for his work.

When relator entered into his contract with the levee district, there were enough unused benefits to pay for the ditches which he excavated, and the board of supervisors promised him that he would not have to wait longer than a year for any of his pay. Under these conditions, whether or not relator could have enjoined the letting of contracts for the Fox river levee until his contract was completed and his work paid for, we need not decide; but certain it is that the law did not devolve upon relator the duty of restraining the levee district through its officers from making additional contracts whereby a flood of warrants were issued and the tax levies of two years exhausted. Difficulties such as confront the relator and the levee district in this case are likely to continue to arise until the Legislature repeals or modifies that section of the law which makes levee taxes payable in warrants.

Having found against the respondents on all the issues tendered by them to defeat the tax levies prayed for by the relator, it is considered, ordered and adjudged that the recommendations of our commissioner, the Hon. T. L. Montgomery, be approved, and that an absolute writ of mandamus issue from this court, requiring and commanding the respondents, or their successors as the board of supervisors of the Des Moines and Mississippi Levee District No. 1, to order tax levies upon all the lands in said levee district as follows: For the year 1911, 25 per cent of $55,000; for the year 1912, 25 per cent of $55,000, (said $55,000 being the original amount of benefits assessed against said lands by commissioners appointed for that purpose), and for the year 1913, a sufficient sum to cover any balance which may be needed to redeem the remainder of relator's warrants which may remain unpaid or unprovided for after the levies of 1911 and 1912 shall have been made and collected. Said board of supervisors shall certify to the clerk of the county court of Clark county the several tax levies which they are herein required to order; and after said clerk of the county court shall extend and apportion said tax levies against the several tracts of land in the district according to the benefits as originally assessed by the commissioners, said taxes shall be collected and used solely for the purpose of paying and redeeming the warrants of relator, described in his petition filed herein. And it is further ordered that the costs of this proceeding be taxed against the levee district.

*Valliant, C. J.,* and *Kennish, Woodson, Ferriss* and *Lamm, JJ.,* concur; *Graves, J.,* dissents.

## ON REHEARING.

PER CURIAM:—Upon motion for rehearing, the foregoing opinion and the judgment in this case are modified so as to require and command the respondents

to levy only a tax of twenty per cent of the benefits assessed against the lands in the drainage district for and during each of the years 1911, 1912 and 1913, which taxes when so levied and collected shall be used solely to pay and redeem relator's warrants, or so much thereof as may be necessary to pay and extinguish all of said warrants and the interest which has accrued or may accrue thereon.

The motion for rehearing is overruled.