GAST REALTY & INVESTMENT COMPANY v.
SOPHIA SCHNEIDER, Appellant—No. 23101.
INDEPENDENT BREWING COMPANY v. SOPHIA
SCHNEIDER, Appellant—No. 23107.
SOPHIA SCHNEIDER, Appellant, v. GAST REALTY
& INVESTMENT COMPANY—No. 23134.

Division One, December 30, 1922.

1. **RETROSPECTIVE STATUTE.** The Constitution inhibits the en-
actment of any law "retrospective in its operation," and a retro-
spective statute is one which relates to past acts or transactions;
one which takes away or impairs any vested right acquired under
existing laws, or creates a new obligation, or imposes a new duty,
or attaches a new disability in respect to transactions already past;
one which creates a new ground for the support of an existing ac-
tion, or a legal bar depriving a party of an existing defense.

2. ————: **Street Improvement: Invalid Assessment: Act of 1917 Pro-
viding for New Assessment.** The Act of 1917 (Laws 1917, p. 391;
Secs. 8661 to 8667, R. S. 1919), providing that in all cases wherein
a city has caused a street to be constructed, and to pay for such
improvement has levied a special assessment against private prop-
erty and issued special tax bills pursuant thereto, and such assess-
ment has been adjudged invalid and unenforceable by the final
judgment of any appellate court of competent jurisdiction, "such
city may, by ordinance duly enacted, make a new assessment or
re-assessment upon all land benefited by such improvement, and
in so doing, if necessary, create a new assessment district and de-
fine its boundaries," was a retrospective act, and invalid, and an
ordinance enacted in pursuance thereto, by which a new assessment
district was created, and an assessment made in 1908, which had
been declared invalid by the Supreme Court of the United States,
was attempted to be charged upon the same lands by the front-foot
rule, instead of by the former illegal area rule, was likewise in-
valid, and the new tax bills levied in pursuance to the new assess-
ment are void. The original assessment having been adjudged to
be invalid on the ground that the assessment according to area was
illegal, the Legislature could not subsequently enact a statute mak-
ing it valid.

Appeal from St. Louis City Circuit Court.—*Hon. John
W. Calhoun,* Judge.

AFFIRMED.

*Rodgers & Koerner* and *Anderson, Gilbert & Wolfort* for appellant.

(1)  Special assessments for local improvements are a form of taxation. Construction Co. v. Ice Rink Co., 242 Mo. 241, 256.  (2)  Where property is benefited by a local public improvement, the receipt of this benefit justifies the State in treating this property as a separate and distinct class and taxing it to the extent of the benefit thus received. Construction Co. v. Ice Rink Co., 242 Mo. 241, 256; Construction Co. v. Railroad, 206 Mo. 177; St. Louis v. Contracting Co., 202 Mo. 463; Wagner v. Baltimore, 239 U. S. 207; Bacon v. Savannah, 105 Ga. 62.  (3)  The invalidity for any reason of a special assessment does not release the property from the obligation to pay its proper share of the cost of the improvement. Judson on Taxation (2 Ed.) sec. 415; Norwood v. Baker, 172 U. S. 269, 293; State ex rel. Paving Co. v. St. Louis, 183 Mo. 235; West Chicago Park Commissioners v. Farber, 171 Ill. 146.  (4)  Statutes authorizing re-assessments where the original assessments have been held invalid are constitutional and valid. Dillon on Municipal Corporations (5 Ed.) sec. 1469.  (5)  Re-assessment statutes do not violate the due-process-of-law clause of Federal or State Constitution. Spencer v. Merchant, 125 U. S. 345; Wagner v. Baltimore, 239 U. S. 207; Schneider v. Gast Realty Co., 245 U. S. 288; Lombard v. West Chicago Park Commrs., 181 U. S. 33; Dillon on Municipal Corporations (5 Ed.) sec. 1469.  (6)  Re-assessment statutes being merely a tax levied on existing benefits, are not retroactive within a constitutional provision forbidding retroactive legislation. Wagner v. Baltimore, 239 U. S. 207; Drainage District v. Turney, 235 Mo. 80; Bacon v. Savannah, 105 Ga. 62.  (7)  Statutes that are remedial in character are not restrospective within the constitutional provision. Abbott v. Mining

Co., 255 Mo. 378; McManus v. Park, 229 S. W. 213; Wellshear v. Kelley, 69 Mo. 343; 1 Kent's Comm. 455. (8)  With regard to improvements made prior to its enactment, the statute here in question applies only to those made under a valid contract and merely provides a means for apportioning the assessment in accordance with actual benefits.  It relates purely to matters of remedy and is not retrospective within the meaning of Sec. 15, Art. II, Mo. Constitution, forbidding retrospective legislation. Wagner v. Baltimore, 239 U. S. 207; Norwood v. Baker, 172 U. S. 269; Bacon v. Savannah, 105 Ga. 62; Page & Jones on Taxation by Assessment, sec. 959; Abbott v. Mining Co., 255 Mo. 378; West Chicago Park Commrs. v. Farber, 171 Ill. 146.  (9)  The legislative determination as to benefits received by plaintiff's property is conclusive.  Sec. 8665, R. S. 1919; Nichols v. Kansas City, 237 S. W. 107; West v. Burke, 228 S. W. 775.  (10) The Statute of Limitations is no bar to this re-assessment, because:  (a)  This statute carries its own limitation period (Sec. 8667, R. S. 1919) and by implication repeals any previous repugnant statutes there may have been.  Gasconade County v. Gordon, 241 Mo. 569;  St. Louis v. Kellman, 235 Mo. 694.  (b)  The right of action is on the tax bills issued under the re-assessment and did not accrue until these bills were issued.  The Statute of Limitations does not begin to run until a right of action exists.  State to use v. Heman, 70 Mo. 241.  (c)  The Statute of Limitations does not run against the State's right to levy a tax.  (11)  The acceptance by the contractor of the original tax bills did not preclude the city from making a new assessment and issuing new tax bills in lieu of the original bills that could not be collected. State ex rel. Paving Co. v. St. Louis, 183 Mo. 235; State ex rel. v. St. Louis, 211 Mo. 591.

*Holland, Rutledge & Lashly* for respondent.

(1)  A law authorizing a re-assessment of a special

tax bill for an area tax by a complete new method of procedure and with an attempted judicial consideration of benefits instead of the old arbitrary method creates a new obligation and is retrospective and invalid and violates the Constitution of Missouri. Constitution, art. 2, sec. 15; Art. 12, sec. 19; City of St. Louis v. Clemens, 52 Mo. 133; State ex rel. v. Redman, 270 Mo. 465. (2) Where a vested right is impaired or taken away or a new obligation created by a statute as to a transaction already passed, the statute is retrospective and void. City of St. Louis v. Clemens, 52 Mo. 133; Ruecking Const. Co. v. Withnell, 269 Mo. 546, 558; Smith v. Dirckx, 283 Mo. 188; Murphy v. Welton, 217 S. W. 620. (3) Even remedial laws are not allowed retrospective operation where they impair vested right. The law in question affects the remedy secondarily only, if at all. Gilsonite Const. Co. v. Greffet, 174 Mo. App. 174, 180; Ruecking v. Withnell, 269 Mo. 546, 558; Hamilton Co. v. Rasche, 19 L. R. A. 584. (4) The mere doing of public work creates no obligation against a property owner to pay therefor until a valid assessment is made under a valid ordinance. City of St. Louis v. Clemens, 52 Mo. 133; Paving Co. v. Munn, 185 Mo. 552; Moberly v. Hassett, 127 Mo. App. 11; Heman v. Parish, 97 Mo. App. 401; State ex rel. v. St. Louis, 211 Mo. 591. (5) The changes made by the new law of 1917, and the ordinance of 1919, are not a part of the remedy, but a vital part of the assessment and tax itself. Cases supra. (6) An obligation to pay for public improvements made under a void ordinance cannot be created even by estoppel. Verdin v. City of St. Louis, 131 Mo. 26, 98; Neill v. Trust Co., 89 Mo. App. 646; McCormick v. Moon, 134 Mo. App. 669; Collier v. Western Paving Co., 180 Mo. 362, 390. (7) Assessments for street improvements are taxes and as such must be laid with strict adherence to the prescribed methods. Jaicks v. Oppenheimer, 264 Mo. 693, 705; Construction Co. v. Ice Rink Co., 242 Mo. 241; Kiley v. Oppenheimer, 55 Mo. 374. Such taxes must not be confused

with benefits assessed in drainage and levee districts, which are not taxes,  State v. Drainage District, 236 S. W. 848;  Morrison v. Morey, 146 Mo. 543;  Levee Dist. v. Railroad, 240 Mo. 614, 631.  (8)  The effort of the Legislature and Board of Aldermen by a retrospective law to re-assess a tax theretofore declared void and to compel payment where this court said there was no liability is a legislative usurpation of judicial power. Baltimore v. Horn, 26 Md. 194;  Chicago Co. v. People, 219 Ill. 408;  Moser v. White, 29 Mich. 59;  People ex rel. v. Owen, 283 Ill. 638;  U. S. Constitution, Sec. 1, Amendment XIV;  Const. Mo. secs. 20 and 30, art. 2.  (9)  Under appellant's theory that the original tax bill was not void, but bad only in part because the area tax was unequally spread, the judgment heretofore rendered is *res adjudicata*.  Eyerman v. Scollay, 16 Mo. App. 498; Weber v. Schergens, 28 Mo. App. 587.  (10)  Under appellant's theory that the very doing of the work created an obligation against respondents, the tax bills are barred by the Statute of Limitations.  (a)  The right to the tax bill is barred in five years:  Moberly v. Hassett, 127 Mo. App. 11;  Weber v. Schergens, 28 Mo. App. 587, 592. (b)  The tax itself is barred in two years:  Granite Bituminous  Co. v. Realty Co.; 199 Mo. App. 226 240;  Eyermann v. Scollay, 16 Mo. App. 498, 502;  City of Springfield v. Ransdale, 240 S. W. 867, 870.  (11)  The same gross inequality exists in the tax bills involved in the first two suits at bar as was condemned in the suits on the former tax bills, because it was held that the property was taxed much farther back than the distance within which the paving could be supposed to be a benefit, and in violation of the Federal Constitution.  Gast v. Schneider Granite Co., 240 U. S. 55;  Schneider Granite Co. v. Gast, 269 Mo. 561;  Commerce Trust Co. v. Keck, 283 Mo. 209.

ELDER, J.—Causes numbered 23101 and 23107 are actions to cancel certain special tax bills issued by the

city of St. Louis for the re-assessment of an area tax levied for the paving of North Broadway in said city. Cause numbered 23134 is an action to enforce similar special tax bills. All of the tax bills concerned were issued pursuant to an act passed by the General Assembly in 1917, Laws 1917, page 391, now Sections 8661 to 8667, inclusive, Revised Statutes 1919. Substantially the same facts being involved in the three cases, they have been briefed and argued together. We shall therefore dispose of them as one.

Adverting to the facts, it appears that on July 24, 1907, an ordinance providing for the improvement of Broadway and the levying of a special tax to pay therefor was passed by the Municipal Assembly of the City of St. Louis, and approved. On October 23, 1907, a contract for the work was entered into between the city and the Schneider Granite Company. In the year 1908 the work was begun and completed in conformity with the ordinance and contract. On January 12, 1909, the street commissioner certified that the work was completed, and, on February 8, 1909, special tax bills for the amount of the contract price were issued to and accepted by the Schneider Granite Company.

The charter of the city, in force at the time the work was done and the tax bills were issued, provided that a line should be drawn midway between the street improved and the next parallel or converging street, which line should be the boundary line of the district, and that one-fourth of the special tax levied should be levied upon the property fronting on the street improved, in proportion to its frontage, and three-fourths upon all property lying between the street improved and said boundary line, in proportion to its area. Pursuant to this provision a frontage tax was levied on all abutting property, and an area tax on all other property within the district determined in the manner above mentioned. Respondent Gast Realty & Investment Company at that time owned a large unsubdivided tract fronting more than

1000 feet on Broadway and running westwardly to Church Road, the next street on the west parallel with Broadway and about 1000 feet distant therefrom. The district line was drawn midway between Broadway and Church Road, or some four to five hundred feet back from Broadway. To the south there were several small irregular tracts, in which the depth varied from 38 to 105 feet over a frontage of several hundred feet. To the east of Broadway the boundary line of the district varied from 150 to 240 feet.

Respondent Gast Realty & Investment Company refused to pay the bills assessed against its property, and suit was brought thereon by the Schneider Granite Company. This court affirmed a judgment, of the Circuit Court of the City of St. Louis in favor of the Granite Company, in Granite Co. v. Inv. Co., 259 Mo. 153, but on writ of error from the Supreme Court of the United States the judgment was reversed, Gast. Inv. Co. v. Schneider Granite Co., 240 U. S. 55, on the ground that the area assessment method distributed the tax disproportionately to the benefit conferred. Mr. Justice HOLMES, delivering the opinion of the court, and speaking of the ordinance authorizing the assessment, said, at page 58:

"But as is implied by Houck v. Little River Drainage District, 239 U. S. 254, if the law is of such character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred, the law cannot stand against the complaint of one so taxed in fact. The city of St. Louis is shown by this case and by others in the Missouri Reports to contain tracts, not yet cut into city lots, extending back from streets without encountering a parallel street much farther than the distance within which paving could be supposed to be a benefit. . . . The ordinance, following the charter as construed, established a line determining the proportions in which the tax was to

be borne that, after running not a hundred feet from the street, leaped to near five hundred feet when it encountered such a tract, and on the opposite side of the street was one hundred and fifty and two hundred and forty feet away. . . . It is enough to say that the ordinance following the orders of the charter is bad upon its face as distributing a local tax in grossly unequal proportions, not because of special consideration applicable to the parcels taxed, but in blind obedience to a rule that requires the result."

On motion for rehearing the court limited its decision to the particular ordinance then before it and "to the assessment of three-quarters determined in the mode described, and to those who, like plaintiff in error, have suffered from the inequalities that have no justification in law."

Upon the coming down of the mandate of the Supreme Court of the United States this court construed the opinion of the Supreme Court as holding the ordinance invalid only so far as it concerned an assessment of property based on the area rule, and reversed and remanded the case to the Circuit Court of the City of St. Louis with directions to enter up judgment in the amount theretofore found to be due based on the assessment under the front-foot rule. [269 Mo. 561.] Upon cross writs of error the Supreme Court of the United States affirmed such decision of this court upon the ground that the questions at issue were matters of state law. [245 U. S. 288.]

In 1917 the Legislature passed a law providing for a new assessment upon land benefited by street improvements, and for the issuance of new special tax bills, where any former special assessment had been or should be adjudged invalid and unenforceable either in whole or in part by the final judgment of any appellate court of competent jurisdiction. [Laws 1917, p. 391.] Pursuant to this act the Board of Aldermen of the City of St. Louis passed an ordinance on January 17, 1919, authorizing an

area re-assessment of all land benefited by the improvement of Broadway, authorizing the establishment of a new benefit district, and directing the issuance of new tax bills. Conformable to this ordinance a new district was laid out, a re-assessment was made and the tax bills involved herein were issued. It is conceded that appellant Sophia Schneider is the present owner of these bills.

Since the improvement work was completed in 1908, respondent Gast Realty & Investment Company has subdivided part of its land and laid out lots on the west side of Broadway 30 by 115 feet, being the land involved in Cause No. 23134. Respondents' property lying to the north of this row of lots has not been subdivided and is 843.50 feet in depth with a frontage of about 224 feet, being that involved in causes numbered 23101 and 23107. The new district line runs back of the lots having a depth of 115 feet, and then jumps to 421.75 feet where it runs midway of the tract having a depth of 843.50 feet, making the property involved in Cause No. 23134 assessed to a depth of 115 feet, and that involved in causes numbered 23101 and 23107 assessed to a depth of 421.75 feet. An agreed statement of facts shows that the average depth of assessment of all the remaining property in the district (a frontage of 4100 feet out of 4331 feet) is 141 feet.

The causes were submitted in the court below mostly on agreed statements of fact. From a judgment in favor of respondents appellant has appealed.

I. It is contended by respondents that the Act of 1917, Laws 1917, p. 391 (now Secs. 8661 to 8667, inclusive, R. S. 1919) and the Ordinance of January 17, 1919, enacted pursuant thereto, are invalid and unconstitutional because retrospective and retroactive in operation. If this be true the judgment in favor of respondents must of necessity be sustained.

**Retrospective Act.**

Proceeding to an examination of the question, we find at the threshold the following provisions of our Con-

stitution prohibiting retrospective legislation, to-wit:

Article II, Sec. 15: *"Ex post facto laws, etc., pro-hibited.*—That no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly."

Article XII, Sec. 19: *"Retrospective laws in aid of corporations or imposing new liability on the people forbidden.*—The General Assembly shall pass no law for the benefit of a railroad or other corporations, or any individual or association of individuals, retrospective in its operation, or which imposes on the people of any county or municipal subdivision of the State a new liability in respect to transactions or considerations already past."

Sutherland speaks of retrospective statutes as those which "relate to past acts and transactions," and of retroactive statutes as those "which operate on such acts and transactions and change their legal character or effect." [Lewis-Sutherland, Statutory Construction (2 Ed.) sec. 641.]

Sedgwick defines a retrospective law to be: "A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." [Sedgwick on Construction of Stat. & Const. Law (3 Ed.) p. 160.] This definition was adopted by this court in Hope Mutual Ins. Co. v. Flynn, 38 Mo. l. c. 485, wherein WAGNER, J., adds: "No new ground for the support of an existing action ought to be created by legislative enactment, nor any legal bar which goes to deprive a party of his defence."

Directing our attention to the Act of 1917, we find the title thereof to read as follows:

"An Act entitled an act to empower cities to assess or re-assess private property for the value of local improvements and to create new assessment districts, if

necessary, where the original assessment for such improvements has been adjudged invalid in whole or in part.''

Looking to the act itself it will be noted that Section 1 provides that in all cases wherein a city has caused to be constructed or re-constructed ''any sewer, boulevard, street, alley, sidewalk or other local improvement, and to pay the cost of such improvement has levied a special assessment against private property and issued special tax bills pursuant thereto, and such assessment, or any part thereof, have been, or shall be, adjudged invalid and unenforceable either in whole or in part by the final judgment of any appellate court of competent jurisdiction for any reason other than the failure of the contractor who has done the work to fully comply with his contract, such city may, by ordinance duly enacted, make a new assessment or re-assessment upon all land benefited by such improvement and in so doing may, if necessary, create a new assessment district and define its boundaries.''

Section 2 provides that the new assessment shall in no case ''exceed that part of the previous assessment that is invalid and is unpaid at the time the ordinance levying the new assessment is introduced.''

Section 6 provides that special tax bills ''in favor of the record holder of the original defective bills'' shall be issued, and that such new tax bills ''shall have the same attributes as have tax bills issued pursuant to original assessments for like improvements.''

Section 7 provides that the act shall be liberally construed ''so as to prevent private property that has been in good faith benefited by local public improvements from escaping payment of its just share of the value thereof,'' and that the act shall apply to all cases wherein original assessments for local improvements ''have heretofore been made under a valid contract.''

Measuring the act by the definitions hereinbefore quoted, there can be no doubt that it is retrospective in

character. Beginning with the title it is manifest that it is intended to be operative only in cases where an original or former assessment has been adjudged invalid. Following its provisions, it calls for a new or re-assessment, which shall not exceed the unpaid portion of the former invalid assessment, and for tax bills to be issued in favor of the holder of the original defective bills. By the closing section the object is disclosed of preventing property theretofore benefited by improvements from escaping taxation, and the act is made applicable to all cases wherein original assessments have theretofore been made. The very purpose of the act, to-wit, the re-assessment of property, as well as its whole tenor, clearly shows that it contemplates transactions which are past. And its legal effect, in so far as the present case is concerned, would be to create a new obligation, growing out of a past transaction, by making respondents liable for a tax substantially the same as that theretofore declared void by the Supreme Court of the United States.    .

Turning to the authorities, we find that in St. Louis to use of Creamer v. Clemens, 52 Mo. 133, this court passed upon a state of facts so closely analogous to the case at bar as to be decisive of the question under discussion. There certain sewers were built in 1867 pursuant to an ordinance which was subsequently declared invalid. In 1870 the Legislature passed an act authorizing a re-assessment of the property for the same work, and the issuance of new tax bills for the unpaid portion of the original assessment. Under this act the tax bills sued on were issued. In an opinion by Vories, J., the act was held to be retrospective, as creating a new right in favor of the contractor and imposing a new liability on defendant (l. c. 145), and plaintiff was denied the right of recovery.

Another case which is particularly relevant and which recognizes the principle that a re-assessment of property for previous improvements made is retrospective in operation, is that of Evans v. City of Denver, 26

Colo. 193. There the constitution of Colorado, as does the constitution of our State, provided in express terms that no law, retrospective in operation, should be passed by the General Assembly. An ordinance authorizing the construction of a sewer, passed in 1883, had been declared invalid by the Supreme Court. In 1893 the General Assembly passed an act which provided that when, by final judgment of the Court of Appeals or the Supreme Court, any assessments theretofore made by the city of Denver for the construction of sewers in any district had been declared invalid, the city might, upon the passage of a resolution by the city council declaring such sewers necessary for sanitary reasons, assess lots in the district for the reasonable value of that portion of the sewer for which previous assessments remained unpaid. Under this law the city council caused a re-assessment to be made. In a suit to restrain the collection of taxes levied pursuant to such a re-assessment, it was held that the Act of 1893 contravened the constitution, the court saying, at page 196:

"Before this act no steps could be taken by the city which would create any liability against them on this account, but now by its terms it authorizes the municipal authorities, by the adoption of a resolution nearly ten years subsequent, to reach back, change and modify the effect of a past transaction, and give it a different legal result from that which it had under the law when it took place, by attempting to make legal that which before was void, which renders nugatory the complete defense of plaintiffs and others similarily situated, which, before, they could assert against any action to compel them to pay for this sewer, and authorizes the imposition of a liability with respect to a past transaction which, before, had no existence. This brings the case clearly within the definition of what constitutes a retrospective statute in its legal sense, which, according to text-writers and many well considered cases on the subject, embraces a statute which abrogates an existing right of action or de-

fense, or creates a new obligation on transactions or considerations already past."

Other decisions of foreign jurisdictions which are pertinent to the matter under review are People v. Lynch, 51 Cal. 15; Fanning v. Schammel, 68 Cal. 428; Hamilton County Commrs. v. Rasche Bros., 19 L. R. A. (Ohio) 584; and First Natl. Bank v. Covington, 103 Fed. 523.

A painstaking examination of the authorities and a careful consideration of the entire question, viewed from the various angles suggested in the comprehensive briefs of counsel for both parties, leads us to conclude that the Act of 1917 is retrospective in operation and violative of the constitutional inhibition.

Other contentions, including the proposition that the judgment of the United States Supreme Court is *res adjudicata,* and that the tax bills in suit are barred by the Statute of Limitations, are urged. From what has been said, however, it is unnecessary to determine the additional questions raised.

It follows that the judgment of the circuit court should be affirmed in all three cases. It is so ordered. All concur.