STATE OF MISSOURI at the Relation of CHARLES G. ROSS, Collector of Revenue in and for Pemiscot County and to the Use of the DRAINAGE DISTRICT No. 8 of said county, Appellant, v. GENERAL AMERICAN LIFE INSURANCE COMPANY, a Corporation.—85 S. W. (2d) 68.*

Court en Banc, April 16, 1935.

*NOTE: Companion case published on page 1229 of this volume.

830

*Sharon J. Pate, Chas. Claflin Allen, Jr.,* and *R. L. Ward* for appellant.

*John A. McAnally, John H. Bradley* and *Williams, Nelson & English* for respondent.

HAYS, J.—This is an appeal from a judgment of the Circuit Court of Pemiscot County rendered for the defendant in a taxsuit to collect delinquent drainage taxes in the amount, approximately, of $23,000, alleged to be due Drainage District No. 8 of said county. The issue for determination is the validity of the assessed benefits which constitute the basis of the taxes in suit, and this is to be determined upon the record made in the drainage proceedings.

It is conceded that said drainage district was duly organized and incorporated in 1910 under the so-called County Court Act (Art. IV, Chap. 41, R. S. 1909); that benefits were assessed as provided by law in the sum of $668,856.65 and confirmed by the county court in September, 1911; that an order was duly made placing an assessment for benefits against all the lands for sums totaling $367,871.28, and issuing serial bonds, maturing May 1, 1915, to May 1, 1932, in

the total sum of $330,000, and letting the contract for the work of construction.

The funds of the district were placed in the Pemiscot County Bank, which closed in July, 1913, with deposits therein to the credit of the construction fund of the district in the amount of $297,879.01. As the result of the bank's failure the county court, on February 15, 1915, found and declared it necessary, in order to complete the construction of the district according to the plan adopted and contract let, to make an additional assessment against the lands in the district benefited by the improvement and to issue and sell additional bonds in the amount of $200,000. The county court, in this order, referred to and confirmed the order of September, 1911, in which said original assessment was made and the bonds issued for the purpose of constructing the drainage system. The court further found, because of inability to obtain funds in the failed bank, it was necessary to make a further tax assessment of $222,552, and the additional assessment was thereupon made upon all the lands in the district in proportion to the original benefits, and $200,000 bonds were issued for the purpose of completing the construction of the district. These bonds matured from 1919 to 1935 and $125,000 thereof were made redeemable at the option of the county, the court ordering that since dividends would be declared from time to time by the bank the same should be appropriated and set aside for the payment and retirement of the larger part of the bonds just mentioned, and that when received these moneys would be applied thereto. With the proceeds of these two issues of bonds the original ditches were constructed.

In April, 1918, one John W. Forsythe and 131 other landowners in the district filed a petition in the county court for cleaning out the ditches, providing outlets and enlarging the dimension of the main ditch and laterals; and for the construction by District No. 8, either separately or in conjunction with Elk Chute Drainage District, of an outlet ditch of adequate size to carry away the surplus waters of No. 8, and that bonds of the district be issued in an amount sufficient to pay the cost of such improvements.

In pursuance of statutory notice given, the county court, on May 6, 1918, ordered L. E. Thrupp, engineer, to examine the ditches and make report thereon. On May 14, 1918, Thrupp made his report, in substance recommending that the work referred to in detail in the petition, including the additional outlet, be done as prayed in the petition. Whereupon hearing was continued to June 3, 1918, to afford opportunity to the landowners to make objections and exceptions. On June 3, 1918, a number of exceptions were filed by different landowners and the court passed the matter until the next day. On June 4, 1918, the court took up the proceeding and after hearing the evidence and the argument of the counsel and after find-

ing the filing of the petition and stating its purpose, further found that the same was signed by twenty per cent, and more, of the number of persons owning lands originally assessed for the construction of the ditches in said district, etc.; that it would be advisable to have further information on the outlet for drainage in the district in connection with the plan of reclamation designed and adopted by Elk Chute Drainage District, and to that end appointed engineer Thrupp to make investigation, surveys and estimates of the cost thereof and report on June 17, 1918, to which date the cause was continued.

On June 17, 1918, the court took up the cause for further consideration and after hearing the evidence offered, and engineer Thrupp's report, to which was attached a report of a committee of five persons in addition to Thrupp,—which committee had theretofore been appointed by the court,—in which the cost of a new outlet is apportioned among the various drainage districts using it and in which No. 8's share of the cost of this outlet is shown to be $195,330.31, the report's estimate of the cost showing the estimate for enlarging the old ditches within the district to be $551,075.40, and District No. 8's share of the outlet $195,330.31; or total cost of $746,405.71. The court reiterated its previous findings made in the cause and then found in detail the manner and form of the notice given and its legal sufficiency, found also and approved the details of the plan of construction as set out in said engineer's reports. The court specifically found "that no good cause, or any cause whatever, has been shown why the ditches mentioned and described in said statement (petition) should not be improved and more effective outlets for drainage provided." The court ordered that said work be done in accordance with the engineer's report and plans, set out in the order in detail, and made an assessment on all the lands in District No. 8 to cover the expense of the betterment within said district, viz.; $195,330.31 toward securing additional outlet provided for in said report and plans on file, and $551,075.40 to cleaning out, deepening and widening and removing the obstructions from the ditches, making a total of $746,405.71 which the court levied and assessed against the lands in said District No. 8 originally assessed for the construction of the ditches and improvements already made, and ordered that the last-mentioned assessment be divided *pro rata* according to said original assessment of benefits against the lands in said district. On June 22, 1918, the county court ordered the county clerk, after giving notice by publication, to sell bonds in District No. 8 to the amount of $571,000, payable in 19 annual installments. These bonds matured from 1920 to 1938, serially, and recited the purpose of their issuance and in form and substance were in full compliance with the law.

On December 4, 1922, the court found and declared that it was necessary, in order to complete said improvement for which contracts

had already been entered into, to make an additional assessment of $55,876.94 on the lands in said district and to issue additional bonds for $150,000, and the court then made an order making said additional assessment, providing for its payment in installments, and directing the issuance of bonds in the amount of $150,000. These bonds contained similar recitals to those contained in the issue of 1918 above mentioned. The court also provided that the bonds should be paid out of these assessments. These bonds were likewise issued and sold, and the work of enlarging and recleaning and providing an additional outlet was thereafter completed.

The evidence shows that the additional outlet was formed by digging a new ditch west from the junction of sections 19 and 30 about three miles to the Dunklin County line, thence some twelve miles to the State line; that the original ditch of No. 8 got its original outlet through Drainage Districts No. 9 and No. 6; that No. 9 began on the township line between sections 36 and 1, which was the south boundary of the district, and its water was carried on to a better outlet to the southward for which it paid; that a dam diverts the water into the new outlet; that the water coming from the north was diverted into and through the new outlet, and this was part of the project of the new work commenced in 1918; that Drainage Districts Nos. 3, 6, 8, 9 and Elk Chute participated in paying for that additional work; that the plans for the enlargement and cleaning of the existing ditches made it necessary, in order to carry the increased flow of water, to improve the outlet; that the increased flow of water would have been too big a load, not only for No. 8 but for the outlets of 3, 6 and 9; that the new outlet relieved the lands above it (north of it) and furnished an outlet for the lands above the diversion, so that the lands below the diversion in No. 8 retained an adequate outlet through the old outlet, and all the lands in District No. 8 were benefited and adequately relieved by this new work. There is no contention that the work done in this behalf has not adequately and satisfactorily accomplished the result it was designed to effect.

There were deeds of trust given by Forsythe to the Missouri State Life Insurance Company on the Forsythe lands now owned by the defendant in this case and involved in this case, and other loans were made by the Missouri State Life and the International Life at various times on various tracts of lands involved in this suit which were foreclosed either by the Missouri State Life or by the General American Life, which purchased the assets of the former. It also appears that on April 6, 1918, at the time when the recleaning petition was filed, that a petition was signed by persons who were owners of a large part of the tracts of land now owned by the defendant and sued on in this case; and in general a very large portion of the lands sued on in this case were then owned by persons who signed the re-

cleaning petition. All of the tracts owned by the General American Life and involved in this suit were acquired either by taking over the Missouri State Life or by direct foreclosure by the General American, and they acquired title from those owners mostly by foreclosure. The facts stated in this paragraph were set up in appellant's reply filed to respondent's answer in this case, and are alleged to create an estoppel against the respondent from contesting the validity of the tax bills in suit.

Of the first issue of $330,000 of bonds $296,100 has been paid; of the second issue of $200,000, $123,900 has been paid; of the first recleaning issue in 1918 of $571,000, $129,000 has been paid, and of the second recleaning issue of 1922 of $150,000, $22,400 has been paid. The drainage taxes on all the lands involved in this suit were paid until 1931. These payments aggregate $571,400.

The benefit assessments complained of are the second assessment for the original construction work and the two assessments for the work of recleaning and enlargment of the ditches and of making the new outlet. Apart from the interpretation of various statutory provisions which bear on these assessments, their validity is largely controlled by the same general principles of law. It is perhaps for that reason the assessments are by the counsel briefed together and thus presented from divergent points of view.

■ It is the contention of the respondent that the county court had no authority to make a levy in excess of the original levy of $367,871.28, but in no event did the court have authority to make levies or assessments and sell bonds in excess of the original assessed benefits. Our attention is invited to the statutes pertaining to that matter. They follow, quoted in part:

The work of recleaning ditches and of making the additional outlet was done under Revised Statutes of 1909, Sections 5613 and 5614 (as amended by Laws 1913, p. 279). Said Section 5613 provides that:

"When any ditch, constructed under this article, and the amendments thereto, needs to be enlarged, cleaned out, obstruction removed therefrom, or new work done, twenty per cent of the landowners of the land originally assessed for the construction of any such ditch may file a statement, in writing, with the county clerk setting forth such necessity. Upon the filing of such statement, the clerk shall, if such statement is filed more than four weeks before the next regular term of court, set the same for hearing on the first day of the next regular term of the county court. . . . After any such statement has been filed the county clerk shall cause to be published in four issues of some weekly newspaper published in the county, the last insertion to be before the day set for hearing such

statement, the following notice. . . ." [R. S. 1899, sec. 8307, amended, Laws 1907, p. 333, Laws 1909, p. 634.]

Section 5614 provides:

"On the day set for the hearing of the statement described in the preceding section, the county court shall, unless good cause to the contrary be shown, order the county surveyor, or other competent person to be named by the county court, to have such ditches enlarged, cleaned out, obstructions removed therefrom or new work done, as determined by the court, and make report to the county court of the cost thereof at a time to be fixed by the court. If the court finds that the owners of a majority in acreage of said district are petitioners, or have joined in the prayer of said petition for said ditch or improvement by motion, then the court shall find in favor of making the improvement. Upon the filing of the report, by the person appointed by the county court, of the cost of such work, the county court shall divide the cost of any such work *pro rata* according to the original assessments of benefits against the lands included in such drainage district, and the county clerk shall place the same upon the tax books against the land, to be collected as other taxes. . . . If the county court decides to have the new work done, they shall appoint three persons with the qualifications of viewers, as provided in this article and the amendments thereto, to serve with the surveyor, or other person appointed by the court, to determine the damages, which shall be treated in all respects as damages mentioned in this article and the amendments thereto. The work as determined on by the county court shall be advertised, sold and let and the contract to be performed as provided for in this article, and the amendments thereto, for constructing the ditch. . . ."

Subsection 2 of Section 5619a of said amending law (p. 281) provides in substance that the amendment shall not have the effect of abating any drainage district heretofore organized under said Article IV, Chapter 41, and said drainage district or districts may hereafter proceed under the provisions of this act; that the amendments contained in the act shall be deemed to be remedial in their character, shall be liberally construed by the courts and shall be construed to apply to all districts hereafter organized, as well as those in force of organization or hereafter organized under said Article IV, Chapter 41 as thus amended. Subsection 3 is an emergency clause, in declaring the amendment to be remedial in its nature and necessary in order to successfully carry out the objects of said laws and the amendment.

As first amended Sections 8307-8, Revised Statutes 1899, which became Sections 5613 and 5614 of the 1909 Revision, contained no provision for enlarging, repairing, recleaning or maintaining ditches or doing new work in an existing drainage district. In a case cited

by respondent, State ex rel. v. Bugg, 224 Mo. 537, 123 S. W. 827, an order that was made in 1907, for recleaning, etc., was attacked. It was held in that case that the only way in which work of that character could be accomplished under the County Court Act as then existing was by the organization of a new district covering the territory in which such work was to be done. Thereafter Sections 8307-8 were amended so as to afford a supplementary plan for such work quite different from that provided in other sections of the statutes for the establishment of drainage districts under said act. [Laws of 1909, p. 634.] So, in view of said Amendments of 1909 and 1913, the Bugg case, supra, has no application other than historical to the matter now in hand, and other sections of said act which relate to the procedure to be followed in establishing drainage districts, and which respondent discusses at length, are likewise without application. In addition to the provisions of the supplementary plan, supra, set up in the Act of 1913, page 279, there was a provision made by new Section 5611-b, for the ordinary maintenance of ditches and for assessing a maintenance tax *pro rata* on the lands in the district. This section impliedly delimits said Sections 5613-14, so that the proceeding embraced in the latter sections stands out clearly as a distinct proceeding supplementary to the original one.

In relation to the assessment of benefits in the original establishment of districts such as No. 8, Section 5588, Revised Statutes 1909, which governed the same, made no provision for assessments in excess of the original levy. This section also was re-enacted and amended in said Amendment of 1913. The portion of such amendment here pertinent (Laws, 1913, p. 274), following the provision for the assessment of benefits, is this: ". . . And if it be found at any time by the county court that such apportionment or tax assessment made by the county clerk shall be insufficient, the county court shall direct the clerk to make a further tax assessment, proportioned on the original assessment of benefits, without notice, on the lands benefited, to be collected in the same manner as the original tax assessment." Prior to this amendment it was held in State ex rel. v. Redman, 270 Mo. 465, 194 S. W. 260, cited by respondent, that a drainage district organized under the County Court Act of 1905 had no power to subsequently increase the assessments, and, further, that the county court, under that statute exhausted its power in making the first levy. In the Redman case the original assessment was made in 1906 for $36,000 and bonds issued for $56,000. Afterwards, in 1912, the inadequacy of the assessment becoming apparent, the county court made another order for an additional assessment to raise additional money, and it was the latter order which was in judgment in that case. It will be observed that said order, having been made before the Amendment of 1913, was necessarily made without authority and

therefore void, as the amendment, if applied to it, would operate retrospectively, as the court held. As we view the Redman case it has no effect on this case.

Considering only the face of the amendment, it seems clear that this legislation was intended to comprehend additional assessments made after its enactment, as in drainage districts such as No. 8. It would seem that the legislative amendment referred to above was designed to supply the previous lack of power upon which the decision in the Redman case rests. But, even so, the respondent asserts that said provision in said amendment is retrospective if interpreted as applying to a district established, as this one was, prior to the passage of the amendment and is therefore in violation of constitutional provisions whose substance, so far as relevant here, is that no law may be passed "impairing the obligations of contracts, or retrospective in its operation, or which imposes on the people of any county or municipal subdivision of the State a new liability, in respect to transactions or considerations already past." Or, as stated conversely in Sedgwick on Statutory and Constitutional Law, 160: "A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions . . . already past, is to be deemed retrospective or retroactive." Respondent's cases cited in support of this point are State ex rel. v. Redman, supra; Hope Mutual Insurance Co. v. Flynn, 38 Mo. 483; Barton County v. Walser, 47 Mo. 189; Gast Realty, etc., Co. v. Schneider, 296 Mo. 687, 246 S. W. 177; Smith v. Dirckx, 283 Mo. 188, 223 S. W. 104.

The Dirckx case decided that the income tax law, as amended in 1919, increasing the income tax rate for the entire year of 1919 on the income earned during the entire year, and not merely that received subsequent to the adoption of the act, operated retrospectively as to that portion of the rate which was an increase over the former rate. In the Gast Realty Company case the statute that was reviewed empowered cities to reassess private property for the value of local improvements and to create a new assessment district, if necessary, where the original assessment had been declared *invalid*. The court held the statute to be retrospective. In Insurance Co. v. Flynn, supra, there was in judgment a statute which provided that evidence of a certain character should be conclusive as against the insured. The statute was held to be retroactive in its operation in that it deprived the insured of his defense and debarred him from the exercise of a pre-existing right. In the Barton County case the court dealt with an act validating titles to swamp lands which the county had previously sold. The court held that the act was not unconstitutional as being retrospective in its operation, and was valid as to political

subdivisions, since their functions are of a public nature and such bodies hold their property in subordination and under the control of the Legislature.

It seems clear that the cases just referred to have no tendency to show that the amendatory act under consideration operated retrospectively in this instance. In its effect on District No. 8 said amendment merely enlarged the scope of a power previously conferred upon the county court. The amendment looked forward not backward. It did not operate on improvements already made; on the contrary, it contemplated additional work to be done in furtherance and completion of previous work which had accomplished inadequate results. It had nothing to do with past assessments or the enforcement thereof. Its only relation to a time antecedent is found in the provision looking to the original assessment for a basis on which to make the special assessment and proportion it on the original assessment. "But a statute is not retrospective, in the sense under consideration, because a part of the requisites for its action is drawn from a time antecedent to its passing." [Endlich on Interpretation of Statutes, sec. 280, page 377.] This question of retrospective operation of the amendatory statutes in this case is settled against respondent's contention in the cases subjoined to the next paragraph, infra.

No existing contractual rights of the landowners were infringed upon or violated through said amendment. "We do not hesitate . . . to say that the charter of a public corporation does not constitute a contract with its members that the laws it was created to administer will not be changed; and the State is still at liberty, as to them and the corporation, to continue its efforts to improve its methods of taxation with respect to these subjects." [Houck v. Drainage District, 248 Mo. 373, 1. c. 394, 154 S. W. 739. See, also, Barnes v. Pikey, 269 Mo. 398, 190 S. W. 883; Rauch v. Himmelberger, 305 Mo. 70, 264 S. W. 658.]

█ We consider now the recleaning proceeding and the first assessment of benefits therein, and after considering it we shall have occasion to consider certain additional questions relating to the second assessment made therein and relating alike to the supplementary assessment made for the completion of the original work in the district. In respect of the first mentioned proceeding the respondent insists that the county court acted without jurisdiction; that, under the guise of a cleaning out, that court constructed an entirely new system of drainage, all without the appointment of viewers and without giving the landowners a chance to be heard, and therefore in violation of the due process clauses of the State and Federal Constitutions.

The provisions of the applicable statutes, Sections 5613 and 5614, Revised Statutes 1909, clearly authorized a proceeding for cleaning

ditches and doing new work. Conformably therewith a statement or petition was filed looking to that end, and due notice given the landowners of the purpose and nature of the same. At the return day appointed in the notice some fifty objectors appeared and filed exceptions, raising much the same questions as are raised on this appeal. The cause was heard on the evidence and the argument of counsel and the prayer of the petition granted. The court found the existence of all the facts essential to its jurisdiction and in so doing acted judicially in the premises. Certiorari was available to question the validity of the proceeding as there was no statutory provision for appeal. [Turner v. Penman, 220 Mo. App. 193; State ex rel. v. Taylor, 224 Mo. 393.] That the court had jurisdiction of the subject matter and the lands and landowners to be affected is beyond question. [State ex rel. v. Bugg, 224 Mo. 537, l. c. 556, 123 S. W. 827; State ex rel. v. Taylor, supra, l. c. 461.]

It is insisted that the exceptors were denied a hearing on their exceptions. The legal implications from the court record are to the contrary. Indeed, the court specifically found that "No good cause, or any cause whatever, has been shown why the ditches mentioned and described in said statement (petition) should not be improved and more effective outlets for drainage provided." Though irregular, this finding was tantamount to a denial of the exceptions filed. Had the exceptors been denied a hearing, mandamus would have been available to them. "They cannot wait and then set up the want of a hearing in fact when sued for the assessment." [Hibben v. Smith, 191 U. S. 310.] The notice was for the very purpose of affording them an opportunity to be heard. In such case it is not constitutionally necessary to give a rehearing or an appeal. [Fallbrook Irrigation District v. Bradley, 164 U. S. 112, l. c. 168.]

Upon this cleaning proceeding a jurisdictional attack is made on the ground that viewers were not appointed to assess damages on the "new work, as the statute required." This would affect only the new outlet. It appears from the record that a committee of five members in addition to Thrupp, the engineer, was appointed to investigate and report in reference to the new outlet. This they did, as shown above, and furnished their estimate of the cost (damages in one view) of the new outlet and allocated to District No. 8 its share thereof. While this was an irregularity, we are of the opinion that such action is sufficient as against the attack here made upon it. [State ex rel. v. Taylor, supra, ibid.] Under said Section 5614 it was only as to new work that viewers were required and then to assess damages alone. This the committee substantially did.

■ With respect to each of the supplementary assessments the respondent urges that the various statutes under review cannot be construed to authorize levies in excess of benefits originally assessed,

without violating the property and due process clauses of the State and Federal Constitutions and of the Fourteenth Amendment. Respondent cites the cases immediately following: State ex rel. Drainage Dist. No. 8 of Pemiscot County v. Duncan, 334 Mo. 733, 68 S. W. (2d) 679, which was in prohibition to prevent the circuit court from granting mandamus to compel payment of matured drainage bonds of said district (the present beneficiary relator). The question decided was whether the treasurer could be forced to pay in full the money he had on hand to certain bondholders, when it was shown the district was insolvent and other bondholders would not be paid. State ex rel. Sturdivant Bank v. Little River Drainage Dist., 334 Mo. 753, 68 S. W. (2d) 671, was an appeal in a mandamus case involving the same question that was decided in the Duncan case, supra. In both of these cases the court had occasion to say that under Section 10759, Revised Statutes 1929, and under the laws of Missouri drainage districts have no inexhaustible power to tax but are restricted to the amount of benefits assessed, and said section so provides. State ex rel. v. Thompson, 328 Mo. 728, 41 S. W. (2d) 941, was a proceeding in mandamus to compel the State Auditor to register bonds issued under the refunding statute, Revised Statutes 1929, section 11022, which specifically provides that the refunding bonds shall not exceed in amount the bonds that are to be refunded. In deciding the question whether, in the refunding operation, the subsequent levy would produce inequality, the court said in denial of that proposition: "Of course the additional assessment should not exceed the benefits assessed against the land, but no such contention is or could be successfully made in this case. . . ." The statement made in said cases were applicable to the facts in judgment there, but not applicable here for in those cases the court was applying presently existing statutes to then present conditions, statutes essentially different from former statutory provisions relevant to the case at bar. These latter will now be considered.

The original law for doing the work did not limit the cost thereof to the assessed benefits (Secs. 5584 and 5589, R. S. 1909). The recleaning sections 5613 and 5614, Revised Statutes 1909, did not limit the cost of the assessment to the original assessed benefits. In 1919 the Legislature repealed and re-enacted the then statutes which are now Chapter 64, Revised Statutes 1929, and Section 10823 of that act provides that the taxes for the original construction shall not exceed the benefits. Said Act of 1919 expressly made itself inapplicable, and specifically provides that the repeal and re-enactment of the whole law shall not apply to the existing districts which were authorized to continue to act under the laws as they stood before the repeal.

The question of the validity of the statutes authorizing supple-

mentary assessments of benefits, as against the contention that such assessments were in contravention of the State and Federal constitutional guarantees of rights of property and of due process of law, have been in judgment in this court and the Federal Supreme Court time and again and such statutes have uniformly been upheld. [State ex rel. v. Holt County, 135 Mo. 533, 37 S. W. 521; State ex rel. v. Wilson, 216 Mo. 215, 115 S. W. 549; State ex rel. v. Bates, 235 Mo. 262, l. c. 286-287, 138 S. W. 482, and cases cited; Roberts v. Irrig. Dist., 289 U. S. 71.]

It is true that the supplementary assessments were made without notice. That would seem to be a matter of lesser consequence as regards the second bond issue made in the original proceeding, as said issue was within the amount of benefits originally assessed. Since there was no statutory provision prohibiting additional assessment, there was no constitutional obstacle, State or Federal, to the same for the doing of work in excess of the orignially assessed benefits for construction of the ditches. [Breiholz v. Pocahontas, 257 U. S. 118; Roberts v. Irrigation District, 289 U. S. 71; State ex rel. v. Bates, supra.] Furthermore, as regards the determination of the additional benefits and assessments made both for the original work and for recleaning the ditches, these assessments were legislative in character and made within the jurisdiction of the county court, requiring no previous notice. [Mudd v. Wehmeyer, 323 Mo. 704, 19 S. W. (2d) 891, 895; Houck v. Little River Drainage Dist., 248 Mo. 373, 154 S. W. 739, 239 U. S. 254; Breiholz case, supra; Spencer v. Merchant, 125 U. S. 345; Roberts v. Irrigation Dist., supra.] These authorities hold in effect that when the benefits are so assessed in accordance with the State statutes and in proportion to the benefits originally assessed, no hearing is essential to give effect to this feature of apportionment, and that "a legislative act of this nature can be successfully called in question only when it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power." [Embree v. Kansas City & Liberty, etc., Dist., 240 U. S. 242, l. c. 250, citing Houck v. Little River Drainage Dist., supra.] But in instances of arbitrary action referred to in the latter part of the quotation above, or absent jurisdiction of some essential feature of the proceeding (a question not involved here, State ex rel. v. Wilson, 216 Mo. l. c. 277, 115 S. W. 576) a hearing is due a landowner whose property is affected, before it is finally subjected to the charge upon it. No notice having been given or appeal provided with reference to re-assessments due process of law, to which respondent is so entitled, a hearing is now being accorded respondent in the case at bar, in which its defense of alleged invalidity of the charge upon its property is being considered. This, under the authorities, satisfies constitutional requirements. [Mudd v. Wehmeyer, supra; State ex rel. v. Bates, supra.]

844

A prima facie case having been made, the burden was on the respondent to show the invalidity of the taxes. The essence of the answer filed in the trial court was the charged invalidity of the proceedings in the county court, and they were alleged to have been arbitrary for the reasons advanced here and which we have discussed.

From what has been said above the county court record, as we view it, does not sustain the charge. Assessing tribunals, in the performance of their duties, are bound in morals and law to exercise an honest judgment, and it is not to be presumed that they will act otherwise than according to this rule. [Spring Valley Water Works v. Schottler, 110 U. S. 347; Spencer v. Merchant, 125 U. S. 345.] We are not convinced that arbitrary action is shown by said record. In this respect the record shows the fact of re-assessment and the amount of each and all the assessments; and bonds issued in . the total sum of $1,251,000 and bonds unpaid in the amount of $679,000; the acreage in the district 66,583.88, and in suit 3960. Respondent's lands were assessed to meet general obligations of the district, and the fact that the apportioned burden exceeds estimated benefits fails to support the claim of arbitrary action. We are unable to say that, because the assessment was distributed in proportion to estimated benefits, an exaction exceeding such benefits amounted to an arbitrary exaction and represents a plain case of abuse of power. A general tax distributed in proportion to benefits received is not indicative of arbitrary action and is not violative of the Fourteenth Amendment. [Roberts v. Irrigation Dist., supra.]

It would seem from the long inaction of the respondent in raising the issue of invalidity and the continued payment of taxes until the agricultural, as well as the general depression was well advanced, that the depression is the more serious threat to the district. This observation, however, is not to be understood as being intended to minimize in any degree the grievously heavy burden the landowner in suit, and others in like case, must unavoidedly bear in discharging the tax levies of the district—at least until agricultural and general economic conditions may show some substantial improvement. From the foregoing considerations we are of the opinion, and so hold, that there was no substantial evidence in the cause to support the finding and judgment of the circuit court and that the errors assigned are well taken.

The respondent took *cum onere* of all the assessments and levies on the lands in suit. This perforce of the statutes in such cases made and provided. Holding the views expressed above, we think no good purpose would be served by further extending this opinion in the determination of the alleged estoppel. The briefs filed in the case give the information that many other cases are pending in the courts of Southeast Missouri involving the other questions raised herein and

are awaiting this decision. For this reason also we refrain from putting the decision upon an additional base, if we should so rule, with which the other cases may not be concerned.

A feature overlooked by the briefs, though raised in the answer, is that the tax bills in suit reflect a double assessment on two of the tracts of land in suit. This overcharge, if it exists, should be corrected in entering final judgment in the case. The judgment from which this appeal was taken is reversed and the cause is remanded with directions to the circuit court to enter judgment upon the tax bills in suit for the taxes shown thereby, together with interest, penalties and costs, as provided by law. All concur.