**Application of Paul Robert GILBERT.**

**No. 60188.**

Supreme Court of Missouri,
En Banc.

April 10, 1978.

---

Paul R. Gilbert, pro se.

James O. Swaney, Jr., Kansas City, for respondent.

RENDLEN, Judge.

This appeal arose from Paul Gilbert's pro se application in the circuit court of Jackson County to open the adoption records of appellant under authority of § 453.120, RSMo 1969, raising many of the same issues determined in the companion case of *In the Matter of the Application of Annetta Louise Maples*, No. 60187, 563 S.W.2d 760 (Mo.banc 1978), decided this date. here, as in *Maples*, the application was denied by the circuit court and an appeal taken to the Missouri Court of Appeals, Kansas City District, from which the cause was transferred prior to opinion under Art. V, § 11 of the Missouri Constitution, 1945, as amended in 1976. The dispositive facts are similar to those of *Maples*, with certain differences which will be noted as they appear.

Appellant, an adult, now forty-eight years of age was adopted during his first year and raised by his adoptive parents as though he was "their child since the date of adoption." At the time of filing his application in April, 1975, Gilbert's adoptive mother was deceased and his eighty year old father in ill health. Nothing in the transcript, briefs or oral arguments indicates his adoptive parents had consented or approved of the search for his natural parents, yet appellant stated, "[T]he adoptive parents really have no interest in preventing the Petitioner to obtain the information he now desires." Concerning the proceeding's effect on his natural parents, appellant states in his petition, "I assume that if my real parents are alive, that the anonymity once desired is long exhausted." This theme is repeated in the memorandum filed with the petition as follows: "Furthermore, the biological parents may now be deceased and have no interest at all in the continuation of this secretive information," with this added observation, "On the other hand the biological parents [sic] assurance for anonymity should not be preserved at the expense of the adoptee, for it is unjust that a child should suffer for the transgressions of his parents." These statements indicate a casual indifference toward rights of the natural parents and implies a knowledge of improper conduct on their part, of which neither petitioner nor this court have information and quite properly should not. In oral argument, appellant stated, "I'm not trying to find them to harm them [the natural parents], I'm trying to find them out of interest, curiosity and perhaps even love."

Without a hearing the trial court, accepting the facts alleged as true, determined that from the petition's allegation "insufficient cause has been shown to allow the inspection as requested, such information being confidential, and that no constitutional rights of petitioner are violated by denial of the request."

■ Appellant contends as error: (1) Section 453.120, RSMo 1969, impermissibly abridges his constitutional rights to receive information, his right to privacy and his rights under the equal protection clause of the Fourteenth Amendment and is thus invalid; (2) The trial court erred in denying his petition because appellant had shown good cause for inspection of the records.

The constitutional issues are essentially the same as those raised in *Maples, supra,*

and for the reasons set forth there, appellant's first contention as to constitutional invalidity of the statute is denied.

Appellant's other allegation of error is that he has shown good cause for inspection of the records and the trial court erred by denying the same. As stated in *Maples,* 563 S.W.2d at p. 760, "The court on good cause shown may release such portions of an adoption proceeding record as it deems necessary to satisfy the needs of the applicant when measured against the rights of the natural parents, the adoptive parents and the societal need to protect and maintain a viable system for adoption." Though the court apparently adopted the proper standard of "good cause" when judicially determining plaintiff's petition failed to state a claim for relief, under the guidelines set forth in *Maples,* the court should on remand, because of the factual situation presented in this case, undertake to learn if the natural parents will waive the confidentiality of the records and consider that fact in making its final determination of the cause.

■ Appellant's application alleged he is a member of the Church of Jesus Christ of Latter Day Saints and "[a] fundamental belief of that church is that in order to be saved and exalted after death every person must trace their ancestry and perform certain ordinances for their blood relatives . . . . I desire to perform my genealogy and trace my ancestry and I cannot so do without the names of my real mother and father." Respondent's brief challenges the validity of the allegations concerning the church's "fundamental belief," and offers contrary documentary evidence quoting from a July 12, 1973, letter of the *Mormon Genealogical Society* Executive Assistant in which the precise issue was addressed. It was stated there "[T]hat the Church accepts the mandate of the law and recognizes that a proper legal adoption constitutes a complete substitution of parents, and thereby the obligation of the adopted children is reverted to the adoptive parents. Because of this, the Church would not make any official stand to take an active part in opening the files that are sealed by legal process as a result of adoption." This letter followed an earlier epistle from the "Office of the First Presidency" to the presidents of temples dated January 20, 1961, stating, ". . . the conclusion has been reached that in the future there should be no difference between the sealing of adopted children to parents and the sealing of children to their own parents. In other words, when a child is legally adopted by a couple it should be sealed to its adopted parents the same as if it were born to them; it thus becomes their child, lawfully sealed to them for time and eternity, and no mention should be made on the record of the sealing indicating that it is an adopted child."

While we cannot consider the above recitals from respondent's brief as evidence, we recognize such evidence could not have been a part of the record in this ex parte proceeding because no opportunity was provided respondent or others to appear or present evidence rebutting appellant's allegations. Similarly, because the petition was denied without hearing, no evidence was offered by appellant. On remand, an opportunity should be afforded the parties to offer evidence concerning the fundamental beliefs of the church, but in receiving such evidence, the court must be mindful that evidence of one's religious beliefs may not require opening the record if it results in preferential treatment for one professing such belief, because the granting of privilege to one religious denomination not enjoyed equally by others could in itself be constitutionally suspect. Nevertheless the fact an individual may be inspired by sincere religious beliefs would bear on the question of the good faith of appellant and in that sense be relevant to the ultimate issue for determination. Conversely, if an applicant misrepresents the tenets or beliefs of his church when advancing the reasons for his application, such would be a factor in measuring the applicant's credibility.

■ Finally, appellant contends the statute is retrospective in character and as such violates minimal standards of due process, arguing that at the time he was

adopted, the statute closing the adoption records had not been enacted and by its enactment his right to freely peruse the records has been impermissibly terminated. The issue was not raised in the trial court and first appears in appellant's *reply* brief. Assignments of error set forth for the first time in the reply brief do not present issues for appellate review, accordingly the contention is denied. *State v. Virgilito*, 377 S.W.2d 361 (Mo.1964); *Griggs v. Miller*, 374 S.W.2d 119 (Mo.1963); *In re Bierman's Estate*, 396 S.W.2d 545 (Mo.1965). However, since the cause is to be remanded for further proceedings and the issue may well be raised and confront the trial court in this case, we depart from the usual practice and state our present view. Because the statute deals only with the administration of adoption records, it does not change a vested interest, contractual or otherwise, but relates only to a mode of procedure. There is no change in the adoptive status under the decree, merely establishment of control of judicial records intended to improve the system and the decree of adoption confers no vested right upon the child to explore the judicial records of that proceeding. Thus the legislature may by statute provide new procedures governing actions to open adoption records which are commenced subsequent to such enactment. For an application of these general principles see *State ex rel. Ross v. General American Life Ins. Co.*, 336 Mo. 829, 85 S.W.2d 68, 73–74[2] [3] (Mo. banc 1935).

The cause is remanded for further proceedings not inconsistent herewith.

HENLEY, FINCH and DONNELLY, JJ., and HOUSER, Special Judge, concur.

BARDGETT, J., concurs in result in separate opinion filed.

SEILER, J., concurs in result in separate opinion filed.

MORGAN, C. J., not sitting.

BARDGETT, Judge, concurring in result.

For the reasons stated in my concurring opinion in No. 60187, *In the Matter of the Application of Annetta Louise Maples*, 563 S.W.2d 760, decided this day, I concur in result in the instant case.

SEILER, Judge, concurring in result.

For the reason stated in my concurring opinion in No. 60187, *In the Matter of the Application of Annetta Louise Maples*, 563 S.W.2d 760, decided this day, I also concur in result in the instant case.